**MISSISSIPPI INTERSTATE EXPRESS, INC., Plaintiff-Appellant,**

v.

**TRANSPO, INC., Azcal, Inc. and Robert Zoller, Defendants-Appellees.**

**No. 80–3808.**

United States Court of Appeals, Fifth Circuit.

Aug. 5, 1982.

Armis E. Hawkins, Houston, Miss., James D. Waide, III, West Point, Miss., for plaintiff-appellant.

G. A. Gafford, James L. Robertson, Oxford, Miss., for defendants-appellees.

Before WISDOM, POLITZ and TATE, Circuit Judges.

TATE, Circuit Judge:

In this diversity action, the plaintiff (Mississippi Interstate), a Mississippi corporation, sues in Mississippi district court two California corporations (Transpo and Azcal) and an individual (Zoller), all residents of California, basing personal jurisdiction upon the Mississippi long-arm statute, Miss.Code Ann. § 13–3–57 (1972). Mississippi Inter-

state sues to recover some thirty-five thousand dollars for its unpaid invoices, and it also alleges that the three defendants conspired to cheat and defraud it of these amounts due and seek putative damages in tort. The district court granted the defendants' motions to dismiss the suit for lack of personal jurisdiction, concluding that Fourteenth Amendment due process barred Mississippi's exercise of personal jurisdiction over these California defendants. Reaching a contrary conclusion, we reverse.

The due process issue as to personal jurisdiction concerns whether the California defendants had sufficient minimum non-fortuitous contacts with the forum state (Mississippi) that the maintenance of this suit does not offend traditional notions of fair play and substantial justice, including in the latter aspect whether the defendant Transpo had purposefully availed itself of the privilege of conducting activities within Mississippi.

Mississippi Interstate's complaint states causes of action against Transpo for breach of contract and against all three defendants in tort. We will first discuss the contract action and, in Part IV below, the tort alleged.

*Factual Context*

This suit arises out of the following factual context:

A representative of Mississippi Interstate, a trucking firm, contacted Transpo, a freight broker, at the latter's office in Bakersfield, California. This discussion led to an oral agreement by which Mississippi Interstate would supply trucks to move goods for Transpo on an open account basis. Pursuant to this agreement, on nineteen separate occasions during the following two months, Transpo telephoned Mississippi Interstate at its headquarters and sole business office in Mississippi, to order the latter's services in shipping goods from one destination to another. On none of the nineteen shipments was the point of origin

or point of destination in Mississippi, although some of the shipments did travel through Mississippi, either because of routing or of truck servicing or maintenance. None of the thirty-five thousand dollars invoiced for the nineteen shipments, payable at the plaintiff's Mississippi headquarters, were ever paid.

All of Mississippi Interstate's trucks were garaged and serviced at the Mississippi headquarters and regularly returned there. While there was no specific prior discussion as to this point, the general agreement reasonably contemplated payment to Mississippi Interstate at its Mississippi headquarters and sole establishment, as in fact the nineteen invoices specifically directed. In performing its obligations to Transpo under the contract(s), Mississippi Interstate from its Mississippi office telephoned instructions and directions to its drivers in accordance with the shipping instructions of Transpo (as well as from there wired salaries and expenses to these drivers).

In urging lack of Mississippi contact, the defendants point out: 1) the initial contract discussions were in California; 2) the defendants are all residents of California, and did no act inside Mississippi (Transpo's telephone calls to Mississippi Interstate there being contended to be the only possible Mississippi contact); 3) all shipments originated and terminated in states other than Mississippi; 4) the defendants have no office or place of business in Mississippi, nor have they ever sent representatives there; 5) they solicited no business in Mississippi and had no local advertising or bank accounts there; and 6) with regard to the tort alleged, all acts of the alleged conspirators occurred outside of Mississippi.

The only substantial issue on this appeal is whether the district court erred in granting the California defendants' motion to dismiss on the basis that retaining jurisdiction in Mississippi would offend these defendants' rights to due process.[1] It is clear

---

1. The defendants only transiently and indirectly attack the district court's conclusion that, for present purposes at least, the plaintiff Mississippi Interstate has made sufficient factual showing to justify the exercise of personal jurisdiction under the Mississippi long-arm statute. As the district court stated:

that Transpo's contact with the State of Mississippi was somewhat minimal, consisting primarily of entering into a contract with a Mississippi corporation and engaging that corporation to deliver certain shipments between states other than Mississippi. This court must now determine whether this contractual relationship with a Mississippi corporation, and the activities conducted pursuant thereto, satisfied the minimum contacts with, purposeful activity in, Mississippi required by due process in order for Mississippi to exercise personal jurisdiction over these California defendants.

## I

The due process contours on the exercise by a forum of personal jurisdiction over a non-resident are established by the following United States Supreme Court decisions: *World-Wide Volkswagen Corporation v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *Kulko v. Superior Court of California*, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978); *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *McGee v. International Life Insurance Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

█ As deduced from these decisions, the determination of whether personal jurisdiction exists is resolved by considering the following criteria: 1) did the defendant have sufficient minimum contacts with the forum state so that it is fair and reasonable to require the defendant to come into the state and defend the suit?; 2) did the de-

fendant purposefully avail itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws? (This latter criteria also includes the consideration of whether the defendant's conduct in connection with the forum state was such that he might reasonably foresee being haled into court there.)

█ As these decisions also indicate, however, if the non-resident defendant's contacts with the jurisdiction were fortuitous, not deliberate, *de minimis*, not substantial, they do not give rise to personal jurisdiction in that forum. Further, whether the minimum contacts are sufficient to justify subjection of the non-resident to suit in the forum is determined not on a mechanical and quantitative test, but rather under the particular facts upon the quality and nature of the activity with relation to the forum state.

We must therefore determine whether, under the present facts, the conduct of the non-residents with relation to ˙Mississippi was sufficient to satisfy these criteria for exercise of personal jurisdiction by Mississippi over them with regard to the particular transactions at issue. We begin our analysis by noting the cautionary plea made by Mr. Justice White in his dissenting opinion when the United States Supreme Court denied writ of certiorari to *Lakeside Bridge & Steel Co. v. Mountain State Construction Co.*, 597 F.2d 596 (7th Cir. 1979), *cert. denied* 445 U.S. 907, 100 S.Ct. 1087, 63 L.Ed.2d 325 (1980):

> As the Court of Appeals noted, 597 F.2d at 601, the question of personal jurisdic-

Three categories of nonresident defendants are subject to substituted service of process under § 13–3–57, Miss.Code Ann. (1972): (1) those who make a contract with a Mississippi resident to be performed in whole or in part by any party in this state; (2) those who commit a tort in whole or in part in this state against a resident of Mississippi; (3) those who do business or perform any character of work or service in Mississippi.

. . . . .

For purposes of this motion, we may assume without deciding that the Mississippi Supreme Court would, if confronted with the

facts of this case, find all three defendants within the reach of the [Mississippi] Long Arm Statute, Transpo on the single contract theory and Azcal and Zoller under the single tort analysis with the accrual of damages in Mississippi supplying the necessary local element of defendant's alleged tortious conduct. *Mandel v. James Graham Brown Foundation, Inc.*, 375 So.2d 1017 (Miss.1979) (single tort, negligence); *Smith v. Temco, Inc.*, 252 So.2d 212 (Miss.1971) (single tort, product liability); *Sheridan, Inc. v. C. K. Marshall & Co., Inc.*, 360 So.2d 1223 (Miss.1978) (single contract).

tion over a non-resident corporate defendant based on contractual dealings with a resident plaintiff has deeply divided the federal and state courts. [Citations of conflicting decisions omitted.] The question at issue is one of considerable importance to contractual dealings between purchasers and sellers located in different states. The disarray among federal and state courts noted above may well have a disruptive effect on commercial relations in which certainty of result is a prime objective. That disarray also strongly suggests that prior decisions of this Court offer no clear guidance on the question.

445 U.S. at 909–11, 100 S.Ct. at 1089. (White, J., dissenting).

In our analysis, we will therefore primarily be guided by the pertinent decisions of this circuit. Because of the disarray and differing approaches of several of the other circuits, we see little profit in extending our discussion to include decisions elsewhere that may be inconsistent with the jurisprudential guidelines developed by this circuit.

## II

The issue we now address concerns the exercise by a forum of personal jurisdiction over a non-resident defendant based upon his contractual dealings with a resident plaintiff. In the close issue presented to us by this appeal, those decisions cited by the plaintiff that we feel are persuasive to the exercise by Mississippi of personal jurisdiction under the present facts are: *Marathon Metallic Building Company v. Mountain Empire Construction Company*, 653 F.2d 921 (5th Cir. 1981); *Standard Fittings Co. v. Sapag, S. A.*, 625 F.2d 630 (5th Cir. 1980) *cert. denied*, 451 U.S. 925, 101 S.Ct. 1981, 68 L.Ed.2d 299 (1981); *Gold Kist Inc. v. Baskin-Robbins Ice Cream Co.*, 623 F.2d 375 (5th Cir. 1980); *Southwest Offset, Inc. v. Hudco Publishing Co., Inc.*, 622 F.2d 149 (5th Cir. 1980); *Product Promotions, Inc. v. Cousteau*, 495 F.2d 483 (5th Cir. 1974).

**2.** This rule applies in cases in which the nonresident defendant is on the "receiving end" of the contractual transaction, as in *Marathon Metallic, Lakeside Bridge*, and the present case.

For reasons to be stated, we find that these decisions (particularly *Marathon Metallic* and *Southwest Offset*) furnish a more persuasive rationale than those relied upon by defendants, to which we will advert below. Consequently, we ultimately conclude that the due process criteria for Mississippi's exercise of personal jurisdiction are met under the particular circumstances before us by the nature and quality of the non-resident defendant's acts with relation to Mississippi.

## III

In the decisions of some of the other circuits, a non-resident defendant is not regarded as purposefully availing himself of the privilege of conducting activities within the forum state by contracting with the resident plaintiff, even though the contract foreseeably causes the plaintiff to conduct business activities in the forum state; the courts view the forum plaintiff's decision to perform its contractual obligation within its own forum state as totally "unilateral." *See, e.g., Lakeside Bridge, supra*, 597 F.2d at 603–04.

The rule developed by this circuit, however, is that when a nonresident defendant takes "purposeful and affirmative action," the effect of which is "to cause business activity, foreseeable by [the defendant], in the forum state," such action by the defendant is considered a "minimum contact" for jurisdictional purposes. *Marathon Metallic Building Co. v. Mountain Empire Construction Co.*, 653 F.2d 921, 923 (5th Cir. 1981.) "When a defendant purposefully avails himself of the benefits and protection of the forum's laws—by engaging in activity ... outside the state that has reasonably foreseeable consequences in the state—maintenance of the lawsuit does not offend traditional notions of fair play and substantial justice." *Prejean v. Sonatrach, Inc.*, 652 F.2d 1260, 1268 (5th Cir. 1981).[2]

In instances such as these, the resident plaintiff is the party obliged to provide services and/or goods to the nonresident defendant, with the

For instance, in *Marathon Metallic, supra,* the plaintiff, a Texas corporation, brought suit in Texas against an individual Colorado resident, a Mr. Ginther, who had guaranteed payment of his Colorado corporation's contractual obligations to the plaintiff. The Colorado corporation, in a series of transactions, purchased merchandise on credit from the plaintiff, and when the corporation defaulted, the plaintiff looked to Mr. Ginther, the guarantor. We held that maintenance of the suit in Texas would not violate Ginther's due process rights, because the effect of his guaranty was "to involve Mr. Ginther in each .... advance of credit over many months and purposefully to cause business activity, foreseeable by Mr. Ginther, in the forum state." 653 F.2d at 923. We ascertained no "want of equity in requiring Mr. Ginther to respond in Texas to an action on a warranty that he voluntarily signed, that he must have known was forwarded to a Texas corporation, and which invited that corporation's reliance on it as a basis for credit sales, made in Texas," to his corporation. *Id. See also Product Promotions, Inc. v. Cousteau,* 495 F.2d 483 (5th Cir. 1974).

 Thus, under the rule of this circuit, here Transpo (the non-resident defendant), by contracting with Mississippi Interstate (the resident plaintiff), is considered to have purposefully availed itself of the privilege of conducting activities within the forum if it was reasonably foreseeable that Mississippi Interstate would in fact perform a material part of its contractual obligations within the forum state.[3] Under such circumstances, the defendant's contact with the forum cannot be deemed to be merely fortuitous. By refusing to contract with the resident plaintiff and thereby "severing its connection with the State," the defendant "can act to alleviate the risk of burdensome litigation." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 295–98, 100 S.Ct. 559, 566–67, 62 L.Ed.2d 490 (1980).

Similarly in *Southwest Offset, Inc. v. Hudco Publishing Co., Inc.,* 622 F.2d 149 (5th Cir. 1980), in facts strongly analogous to the present, we upheld personal jurisdiction over a foreign customer in a suit for contractual payment by a forum supplier. The plaintiff was a Texas printer who brought suit against an Alabama publisher in Texas federal district court for failing to pay for telephone directories that the nonresident defendant had ordered to be printed at the plaintiff's sole plant in Texas. After the defendant's initial order (which was the result of solicitation in Alabama by the plaintiff's sales representative), the defendant subsequently placed eight orders in

---

defendant obliged only to pay for the goods/services provided by the plaintiff.

Different due process considerations may be applicable in the converse situation, *i.e.,* where the resident plaintiff is on the "receiving end" of a contract requiring a nonresident defendant to provide the goods/services. In such instances, the plaintiff might be required to show other factors to prove that the defendant "purposefully availed" itself of the forum, such as by delivery of the goods in the forum by the defendant, negotiation or execution of the agreement in the forum, etc. *Compare Gold Kist, Inc. v. Baskin-Robbins Ice Cream Co.,* 623 F.2d 375 (5th Cir. 1980), *and Product Promotions, Inc. v. Cousteau,* 495 F.2d 483 (5th Cir. 1974), *with Charia v. Cigarette Racing Team, Inc.,* 583 F.2d 184 (5th Cir. 1978).

3. *Barnstone v. Congregation Am Echad,* 574 F.2d 286 (5th Cir. 1978), upon which the defendants heavily rely, is the one decision in which this court may not have followed this rule of reasonable foreseeability. In *Barnstone,* we adopted as our own the report of a magistrate who, applying a rationale similar to that of the Seventh Circuit in *Lakeside Bridge,* held that a court in Texas lacked personal jurisdiction over the nonresident defendant, which had contracted with the plaintiff architect, a Texas resident. In performing his duties under the contract, the plaintiff prepared his drawings, renderings, and models in Texas. The court found this activity to be, at best, unilateral partial performance that could not satisfy the test of *Hanson v. Denckla, supra.* 574 F.2d at 289. The court did not discuss whether the defendant should reasonably have foreseen that the plaintiff would perform in Texas, a criteria more explicitly developed in our subsequent *Marathon Metallic* and *Southwest Offset* decisions, discussed in the text.

*Barnstone* has not been cited in any subsequent published majority opinion of this court. For the reasons discussed in the text, *infra,* we do not find that decision controlling and find more apposite *Marathon Metallic* and *Southwest Offset.*

writing or over the phone directly with plaintiff in Texas. Some payments were mailed to Texas, but no one associated with the Alabama defendant ever visited plaintiff's plant in Texas. The actual process of printing the directories involved the efforts of both the defendant in Alabama and the plaintiff in Texas: camera ready copy was prepared by defendant in Alabama and then sent to the plaintiff in Texas; the plaintiff then prepared proofs which were sent back to Alabama for approval by defendant; the corrected proofs were then returned to the plaintiff, which would then print the phone books and send them to defendant F.O.B. Dallas.

In our analysis, we suggested that Texas was probably the "place" of most of the series of contracts, "since all except the first of [defendant's] offers to print were accepted by [plaintiff] in Texas." 622 F.2d at 152. The process of offer and acceptance in the forum via telephone seems itself indistinguishable from the present case.

We also placed emphasis on the fact that the Alabama defendant was "no mere passive customer" of the Texas plaintiff, 622 F.2d at 152. By this, the decision referred not only to the role played by the defendant in each separate order of the directories and their preparation but also the repeated reiteration of the relationship over a consecutive course of business activity.

█ Here, similarly, the non-resident defendant was no mere passive customer in precisely the same sense. All shipments were initiated by defendant, the tasks of directing the details of such shipments were ones in which defendants exercised a significant measure of control, the relationship between the parties was sustained (not "single" or "fortuitous"), and the plaintiff performed its part of the undertaking at its sole place of business in Mississippi as was known to the California defendant at the outset of their relations.

The defendants rely upon the following decisions: *Placid Investments, Ltd. v. Girard Trust Bank*, 662 F.2d 1176 (5th Cir. 1981); *Charia v. Cigarette Racing Team, Inc.*, 583 F.2d 184 (5th Cir. 1978); *Barnstone v. Congregation Am Echad*, 574 F.2d 286 (5th Cir. 1978); *Arthur, Ross & Peters v. Housing, Inc.*, 508 F.2d 562 (5th Cir. 1975); *Benjamin v. Western Boat Building Corp.*, 472 F.2d 723 (5th Cir. 1973). Of the decisions relied upon by the non-resident defendants, we regard only *Barnstone*, to be discussed below, as offering some support for their position of insufficient Mississippi contact.[4]

In *Barnstone* (but see note 3), the Texas plaintiff, suing a Maine religious organization in a Texas forum, had been engaged in Maine to construct a synagogue in Maine. Although the Texas plaintiff performed the drawing of the plans at his place of business in Texas, all phases of construction were supervised by him in Maine. The court held that, under these circumstances, the partial performance of the contract (drawing the plans) in Texas, and its formal execution there upon the plaintiff's receipt of it by mail after negotiation in Maine, were insuf-

---

4. Without detailed discussion, we will by perhaps oversimplified summary indicate why, with regard to the present facts, we do not regard the other decisions cited by the defendant as persuasive:

*Placid Investments*—simply an application of the Texas long-arm statute (held not applicable), without consideration of federal due process factors;

*Charia*—an isolated and single sale by the foreign defendant to a forum consumer of one boat, not arising out of course of multi-dealings with the forum state as here;

*Arthur, Ross & Peters*—the mail contacts with the forum state (alone relied upon) in confecting the single contract sued upon did not purposefully avail themselves of the forum

laws, where the subject of the contract concerned the purchase and development of real estate in the foreign state in which the foreign defendants resided, and where all construction and activity under the contract was to be performed in the foreign state; and

*Benjamin*—the contract for construction and sale of a single boat was executed in the foreign state, the boat was there constructed and there delivered to the forum purchaser; that some of the pre-contract negotiations (on this isolated and single transaction) were conducted by mail from the forum state, and that the boat was constructed for ultimate use in the forum state, were held to be insufficient contact with the forum state to justify its exercise of personal jurisdiction.

ficient purposeful contacts with Texas to justify personal jurisdiction there.

In *Barnstone*, the defendant was a purely local non-profit religious organization. The facts found by the magistrate and approved by the district court provide no indication that, in the normal course of its activities, the defendant had any ties or engaged in any activities whatever beyond the immediate area of the local Maine community of which it was a part. The primary object of its contract with the plaintiff was local (the building of a synagogue), and there is no indication that the defendant could have reasonably expected (or did in fact expect) that its decision to use an architect based elsewhere, rather than one based locally, might subject it to costly litigation in a distant forum if a dispute between them developed. Furthermore, the plaintiff seems to have failed to advance any other reason which might have permitted the magistrate to conclude that justice or fairness might be served by permitting plaintiff to go forward in the Texas forum (such as the location of witnesses or evidence, the lack of or disadvantages to alternative fora, or the relative resources of the parties).

In contrast, the principal defendant in the present case is a business corporation engaged in extensive commercial activities throughout the United States and Canada, apparently as an agricultural "freight broker." Its contract(s) here with plaintiff involved the carriage of produce, plants, and nursery stock between various points throughout North America. The expectation is far from unreasonable that such activity could lead to litigation in a distant forum either with plaintiff (as a result of the transactions here involved) or with any of the many parties with whom the defendant routinely dealt in the usual course of business. Unlike the *Barnstone* agreement to build a synagogue, the services here provided by the Mississippi plaintiff to the

California defendant lacked a clear local nexus with any particular jurisdiction. In a period of less than two months, in its transactions with plaintiff alone, defendant arranged for shipments between thirty-one different towns or cities in seventeen states and Canada.[5] Further, although activities under the contract(s) were initiated by the defendant from California, Mississippi was clearly the hub of the parties' activities, from which the Mississippi plaintiff directed at the defendant's order the movement of its trucks throughout the nation.

In view of the nature of the business of brokering interstate trucking services, it is hardly surprising that the defendant's contacts with any single jurisdiction are comparatively fleeting and slight. We conclude that it is both reasonable and just to require lesser forum contacts of a non-resident defendant in the context of the present facts than have been found necessary to sustain jurisdiction over defendants whose activities have, both generally and with respect to the transaction giving rise to the controversy, a more purely local character. To hold otherwise would tend to immunize from suit by anyone with whom they do business, in any but their home jurisdiction, those engaged in nationwide commercial activity who conduct extensive commercial activity in other jurisdictions primarily by telephone or through the mails.

In this regard, the Supreme Court in *World-Wide Volkswagen, supra,* recently reiterated:

The limits imposed on state jurisdiction by the Due Process Clause, in its role as a guarantor against inconvenient litigation, have been substantially relaxed over the years. As we noted in *McGee v. International Life Ins. Co., supra,* 355 U.S. at 222–223, 78 S.Ct. at 201, this trend is largely attributable to a fundamental transformation in the American economy:

---

**5.** Nogales, Ariz.; Leavenworth, Wash.; Yakima, Wash.; Wenatchee, Wash.; Pasco, Wash.; Los Angeles, Ca.; Santa Barbara, Ca.; Blyth, Ca.; Temecula, Ca.; New York, N.Y.; Highland, N.Y.; Newburg, N.Y.; Newark, N.J.; Livermore Falls, Me.; Twin Falls, Idaho; Grand Rapids, Mich.; Detroit, Mich.; Houston, Tex.; Fort Worth, Tex.; Birmingham, Ala.; Geneva, Ala.; Charlotte, N.C.; Santa Anna, Geo.; Chesapeake, Ohio; Baltimore, Md.; Louisville, Ky.; Albuquerque, N.M.; Sunburst, Mont.; Toronto, Ontario; Vancouver, B.C.; and Paris, Ontario.

"Today many commercial transactions touch two or more States and may involve parties separated by the full continent. With this increasing nationalization of commerce has come a great increase in the amount of business conducted by mail across state lines. At the same time modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity."

The historical developments noted in *McGee*, of course, have only accelerated in the generation since that case was decided.

444 U.S. at 292–93, 100 S.Ct. at 564–66.

In summary, we thus find that Transpo, the California defendant, had sufficient contacts with Mississippi to justify that forum's exercise of jurisdiction over it, and that it purposefully availed itself of the privilege of conducting activities within that state so that its conduct in connection with it was such that it might reasonably foresee being haled into court here. In a continuous course of a commercial contractual relationship (over two months) with the Mississippi plaintiff, Transpo by telephone calls to the Mississippi headquarters of that plaintiff caused the direction from Mississippi per Transpo's instructions of nineteen shipments from one part of the United States to another, by the use of trucks garaged and serviced at the Mississippi headquarters of the plaintiff. The contract(s) between the California defendant and the Mississippi plaintiff contemplated that the Mississippi headquarters of that plaintiff would exercise supervising control of the truck shipments, sent at the defendant's order (but as directed from Mississippi) from one place in the United States to another. Under these circumstances, the relationship between the defendant and the Mississippi forum was such "that it is 'reasonable ... to require the corporation to defend the particular suit which is brought there.'" *World-Wide Volkswagen*, 444 U.S. at 292, 100 S.Ct. at 564.[6]

## IV

In addition to the contract action alleged, the plaintiff Mississippi Interstate alleges a tort action.

The gist of the tort allegations is that the other California defendants (Azcal, a corporation, and Zoller, an individual) conspired with Transpo for the latter to obtain the plaintiff's services for nothing. The affidavits and exhibits produced in support of these allegations show that, in refusing payment, Transpo wired that the amounts due to Mississippi Interstate would be paid by it instead to Zoller and Azcal, to satisfy an alleged liability of Mississippi Interstate on a bulk sales transfer to it by yet another (Alabama) corporation. The plaintiff also introduced an affidavit by a former president of one of the corporations that avers that the defendant Zoller either owned or controlled, directly or indirectly, the Alabama corporation and that Zoller had informed him during 1977 and 1978 that he owned the controlling interest in Transpo and Azcal, the California corporations. Although the defendants produced affidavits that during 1979 Zoller did not own stock in any of the three corporations, Zoller's affidavit itself admits to a creditor relationship

---

6. To the extent that weighing the respective forum's relative convenience or inconvenience to each party may be a factor, we note that, while California or Mississippi would obviously be more convenient respectively to the California or Mississippi parties, neither forum has distinctive advantages over the other for this litigation involving both California and Mississippi witnesses (and perhaps those from other states which the multi-state transactions concerned). *See, e.g., Quasha v. Shale Development Corp.*, 667 F.2d 483, 487–88 (5th Cir. 1982). Paraphrasing *Standard Fittings Co. v. Sapag, S. A.*, 625 F.2d 630, 644–45 (5th Cir. 1980), while it may be less convenient for Transpo to defend the suit in Mississippi, we find no reason why such inconvenience to Transpo should outweigh the inconvenience to Mississippi Interstate of prosecuting the suit in California, in light of Mississippi's interest in providing a forum and of Transpo's purposefully availing itself of the benefits of conducting business in Mississippi.

with Azcal and that he tried to have Azcal paid the funds allegedly due it by the Alabama corporation.

 At least a prima facie showing has been made that Zoller and Azcal persuaded Transpo not to pay Mississippi Interstate the sums due to it from Transpo, in an effort to divert these funds to Azcal and the Alabama corporation. Under Mississippi law, "a party to a contract has a right of action against a person or corporation who has willfully procured a breach of the contract by the other party to the contract." *Southwest Drug Co. v. Howard Bros. Pharmacy*, 320 So.2d 776, 778 (Miss.1975).

 The damage caused by the tort-caused breach of this (see III above) Mississippi-centered contract resulted in the non-payment in Mississippi of amounts due there. Under these circumstances, the due process requirements of sufficient contact with Mississippi and foreseeable involvement with its law are met by the intentional acts of the non-resident defendants that caused a breach of a Mississippi-centered contract and resultant damage in Mississippi. *Simon v. United States*, 644 F.2d 490 (5th Cir. 1981). See also Restatement of Conflict of Laws 2d, §§ 37, 50 (1971).

*Conclusion*

We therefore conclude, on the basis of the showing thus far made, that these defendants had sufficient deliberate, non-fortuitous contacts with Mississippi in the transactions at issue, so that subjecting them to jurisdiction within that state does not offend traditional notions of fair play and substantial justice; and also that their alleged activities constituted purposeful acts or effects within Mississippi by which it was reasonably foreseeable that suit in a Mississippi forum might ensue. We therefore REVERSE the judgment of the district court dismissing this suit for want of personal jurisdiction over the defendants, and, accordingly, we REMAND this case to the district court for further proceedings.

REVERSED AND REMANDED.