**CROMPTON CORPORATION,**

v.

**CLARIANT CORPORATION, et al.**

**CIVIL ACTION NO. 01–84–B–M2.**

United States District Court, M.D. Louisiana.

Aug. 9, 2002.

Bruce Victor Schewe, Phelps, Dunbar, L.L.P., New Orleans, LA, Michael D. Hunt, Jane H. Barney, Phelps, Dunbar, LLP, Baton Rouge, LA, for Crompton Corp.

R. Shanti Bright Brien, Peragine & Neill, L.L.C., Covington, LA, Phillip A. Wittmann, Stephanie D. Mark Raymond Beebe, Edward J. Rice, Jr., Adams & Reese, LLP, New Orleans, LA, Eddy Manuel Quijano, John B. Davis, II, Amy Collier Lambert, Daniel G. Swanson, D. Jarrett Arp, Robert J. Borthwick, Jacqueline E. Coleman, Stephen C. McKenna, Adams & Reese, Baton Rouge, LA, Daniel G. Swanson, Gibson, Dunn & Crutcher, LLP, Los Angeles, CA, D. Jarrett Arp, Gibson, Dunn & Crutcher, LLP, Washington, DC, for AKZO Nobel Chemicals, Inc.

Davis Bradford Allgood, Antonio D. Robinson, Ryan Estes Johnson, Margaret M. Zwisler, Edward B. Schwartz, Charles E. Graf, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Baton Rouge, LA, for Atofina Cehemicals, Inc.

James D. Miller, Dina A. DeFalco, Herbert S. Washer, Haley Fabricant, Jeffrey H. Drichta, Kantrow, Lee C. Kantrow, William Scott Keaty, Kantrow, Spaht, Weaver & Blitzer, Baton Rouge, LA, for Daicel Chemical.

Larry Michael Roedel, Carlton Jones, III, Roedel, Parsons, Koch, Frost, Balhoff & McCollister, Baton Rouge, LA, James F. Lerner, Weil, Gotshal, & Manges LLP, New York, NY, for Denak Co. Ltd.

1. Rec. Doc. No. 118.

2. Rec. Doc. No. 99.

3. See *Alpine View Company Limited v. Atlas Copco AB*, 205 F.3d 208, 214 (5th Cir.2000).

4. *Petroleum Helicopters, Inc. v. Avco Corporation*, 834 F.2d 510, 514 (5th Cir.1987).

## RULING

POLOZOLA, Chief Judge.

This matter is before the Court on the Motions to Dismiss for Lack of Personal Jurisdiction filed by the defendant Atofina, S.A.[1] and the putative defendant Daicel Chemical Industries, Inc.[2] For the reasons which follow, the motions are DENIED.

### I. Law and Analysis

■ Under the Federal Rules of Civil Procedure, a federal court may exercise personal jurisdiction over a nonresident defendant only if permitted by state law.[3] The 1987 amendment to Louisiana's long-arm statute extended jurisdiction over a foreign defendant to the limits allowed by due process. Thus, when constitutional requirements of due process are satisfied, "there is no longer a need to inquire into whether the defendant's conduct falls within the reach of the long-arm statute." [4]

■ The Due Process Clause will permit a court's exercise of personal jurisdiction over a foreign defendant when "(1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend 'traditional notions of fair play and substantial justice.' " [5]

When determining what "minimum contacts" are, the United States Supreme Court held that, "[i]n judging minimum contacts, a court properly focuses on 'the relationship among the defendant, the forum, and the litigation.' [6] The plaintiff's

5. *Alpine View*, 205 F.3d at 215, *citing Mink v. AAAA Dev. LLC*, 190 F.3d 333, 336 (5th Cir.1999)(*quoting Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir.1999))(in turn *quoting International Shoe Co. v. State of Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)).

6. *Calder v. Jones*, 465 U.S. 783, 788, 104 S.Ct. 1482, 1484, 79 L.Ed.2d 804 (1984), *citing*

lack of 'contacts' will not defeat otherwise proper jurisdiction, but they may be so manifold as to permit jurisdiction when it would not exist in their absence."[7] To establish "minimum contacts," the United States Supreme Court has also held that, " 'foreseeability that is critical to the due process analysis . . . is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.' "[8]

 These required "minimum contacts" may be established by contacts sufficient to assert specific jurisdiction or general jurisdiction.[9] Specific jurisdiction over a nonresident foreign corporation "is appropriate when that corporation has purposefully directed its activities at the forum state and the 'litigation results from alleged injuries that "arise out of or relate to" those activities.' "[10] General jurisdiction is available when "the nonresident defendant's contacts with the forum state, although not related to the plaintiff's cause of action, are 'continuous and systematic.' "[11] This general jurisdiction "may be assessed by evaluating contacts of the defendant with the forum over a reasonable number of years, up to the date the suit was filed."[12]

 When a district court does not conduct an evidentiary hearing, as was the case here, "the party seeking to assert jurisdiction must present sufficient facts as to make out only a prima facie case supporting jurisdiction."[13] Furthermore, a court "must accept as true that party's uncontroverted allegations, and resolve in its favor all conflicts between the facts contained in the parties' affidavits and other documentation."[14]

A. Minimum Contacts with the Forum

Both Atofina, S.A. and Daicel Chemical Industries, Inc. argue that the Court should focus on their contacts with Louisiana, and not the United States, when determining whether personal jurisdiction is present under the facts of this case. This suit is based on the Clayton Act.[15] Section 12 of the Clayton Act provides for a broad nationwide service of process. However, defendants contend that Crompton cannot rely on Section 12 because the venue requirement must first be satisfied. Defendants argue that the plaintiff may only

*Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683 (1977). *See also Rush v. Savchuk*, 444 U.S. 320, 332, 100 S.Ct. 571, 579, 62 L.Ed.2d 516 (1980).

7. *Id.* (Citations omitted).

8. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985) (*quoting World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980)).

9. *Id.*

10. *Alpine View*, 205 F.3d at 215, *quoting Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)(*quoting Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984)).

11. *Id., citing Helicopteros*, 466 U.S. at 415–16, 104 S.Ct. 1868.

12. *Id.*, at 217, *citing Access Telecom, Inc. v. MCI Telecommunications Corp.*, 197 F.3d 694, 717 (5th Cir.1999).

13. *Id.*, at 215 (*See Felch v. Transportes Lar–Mex SA De CV*, 92 F.3d 320, 326 (5th Cir. 1996)).

14. *Id.*, (See *Guidry v. United States Tobacco Co.*, 188 F.3d 619, 625–26 (5th Cir.1999); *Latshaw*, 167 F.3d at 212; *Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 418 (5th Cir.1993) ("[w]hen alleged jurisdictional facts are disputed, we must resolve all conflicts in favor of the party seeking to invoke the court's jurisdiction"); *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir.1990)).

15. 15 U.S.C. § 12, *et seq.*.

rely on the nationwide service of process clause under Section 12 for the purpose of obtaining personal jurisdiction if the plaintiff sues a defendant in the district where the defendant is an inhabitant, or where it is "found or transacts business."

Defendants rely on two cases from other districts wherein the plaintiffs were not allowed to rely on the nationwide service provision of Section 12 because the plaintiffs had not shown that defendants were "found or transacted business in" the district wherein the case was brought.[16]

The plaintiff strenuously opposes defendants' motions. Plaintiff argues that because this is an antitrust case brought under the Clayton Act, it is defendants' contacts with the United States as a whole that are relevant and not simply contacts with the state of Louisiana. However, the plaintiff also contends that it has established minimum contacts with both Louisiana and the United States which are sufficient to permit the Court's exercise of personal jurisdiction over the defendants.

This Court finds the Ninth Circuit's decision in *Go–Video, Inc. v. Akai Electric Company, Ltd.*,[17] is instructive in resolving the issue pending before the Court. While the case is not binding on the Court, it has often been cited by the Fifth Circuit in addressing the venue provision of Section 12 of the Clayton Act.[18] In *Go–Video*, the court stated that, "we note that, as a general matter, courts have interpreted special venue provisions to supplement, rather than preempt, general venue statutes."[19]

The court further held that, "[i]n light of this authority and comment, we would be even more reluctant to adopt a construction of section [sic] 12, which would, by limiting the availability of the valued tool of worldwide service of process, recast its venue provision as a restrictive, rather than a broadening, [sic] provision and might prevent plaintiffs from pursuing legitimate claims under the antitrust laws."[20]

The *Go–Video* court ultimately held that, "[a]fter our analysis of the relationship of venue statutes generally, the purpose and history of the Clayton Act, particularly section 12, the prior caselaw, and the structure of the section itself, we conclude that process may be served on an antitrust defendant pursuant to 15 U.S.C. § 22 in cases where venue is not established under that section but lies properly under 28 U.S.C. § 1391(d)."[21] Furthermore, the court stated that, based on many other courts' decisions, "we believe that the district judge [sic] clearly correct in his view that the worldwide service provision of § 12[sic] justifies its conclusion that personal jurisdiction may be established in any district, given the existence of sufficient national contacts."[22]

The Fifth Circuit, citing *Go–Video*, has held that "[w]hen jurisdiction is invoked under the Clayton Act, the court examines the defendant's contacts with the United States as a whole to determine whether the requirements of due process have been met."[23] Based on decisions by the Fifth Circuit and many other circuits

---

16. See *GTE New Media Services, Inc. v. Bell-South Corp.*, 199 F.3d 1343, 1351 (D.C.Cir. 2000); *see also In re Vitamins Antitrust Litigation*, 94 F.Supp.2d 26, 29–30 (D.D.C.2000). (The defendants state that the Fifth Circuit has never addressed this precise issue; thus, these opinions from the District of Columbia Circuit are instructive).

17. 885 F.2d 1406 (9th Cir.1989).

18. See *Access Telecom*, 197 F.3d at 718.

19. Go Video, at 1408–09; *See* 15 Wright & Miller, *Federal Practice and Procedure* § 3818 at 108–109 (1976).

20. *Id.*, at 1410–11.

21. *Id.*, at 1413.

22. *Id.*, at 1415.

23. *Access Telecom, Inc. v. MCI Telecommunications Corporation*, 197 F.3d 694, 718 (5th

across the country, the Court finds that it must determine personal jurisdiction based on the defendants' contacts with the United States as a whole rather than just with the state of Louisiana.

As noted earlier, the minimum contacts required for personal jurisdiction may be established under either specific jurisdiction or general jurisdiction. The Court now turns to a discussion of each method of establishing personal jurisdiction over each defendant.

## B. Specific Jurisdiction

██ In *Bearry v. Beech Aircraft Corporation,* the Fifth Circuit held that,

[w]hen the cause of action relates to the defendant's contact with the forum, the "minimum contacts" requirement is satisfied, and "specific" jurisdiction is proper, so long as the contact resulted from the defendant's purposeful conduct and not the unilateral activity of the plaintiff. If the contact resulted from the defendant's conduct and created a substantial connection with the forum state, even a single act can support jurisdiction. When the contact stems from a product, sold or manufactured by the foreign defendant, which has caused harm in the forum state, the court has jurisdiction if it finds that the defendant delivered the product into the stream of commerce with the expectation that it would be purchased by or used by consumers in the forum state.[24]

Having set forth the general test of specific personal jurisdiction, the Court now turns to a discussion of whether the Court has specific personal jurisdiction over Atofina, S.A.

### 1. Specific Jurisdiction over Atofina, S.A.

██ Plaintiff argues that the effect of Atofina, S.A.'s sale of MCAA/SMCA at inflated prices to consumers in the United States, including Crompton, provides this Court with specific jurisdiction. Plaintiffs also argues that there is additional evidence supporting specific jurisdiction because Atofina Chemicals admitted that Patrick Stainton and Jaques Jourdan, who are both Atofina, S.A. employees, had "pricing responsibility with respect to the sale of MCAA/SMCA in the U.S." [25]

The plaintiff also contends that Elf Atochem's guilty plea confirms that between 1995 and 1999, Atofina, S.A. entered into an agreement with other defendants to create higher list prices for MCAA/SMCA sold to customers in the United States and to allocate the market for MCAA/SMCA between them. Crompton's predecessor, Witco, was one of the United States customers affected by this alleged agreement to raise the prices to United States customers. Because the information handled by the parties to this pricing agreement includes sales data relating to Witco's purchases in Louisiana, the plaintiff contends that this shows that Atofina, S.A. did affect Louisiana to an extent sufficient to establish "minimum contacts."

██ In *Mississippi Interstate Express, Inc. v. Transpo, Inc.,* the Fifth Circuit set forth the rule that "when a nonresident defendant takes 'purposeful and affirmative action,' the effect of which is 'to cause business activity, foreseeable by (the defendant), in the forum state,' such action by the defendant is considered a 'minimum contact' for jurisdictional purposes." [26]

---

Cir.1999); *See Go–Video, Inc. v. Akai Electric Company, Ltd., et al.,* 885 F.2d 1406 (9th Cir.1989).

**24.** *Bearry v. Beech Aircraft Corporation,* 818 F.2d 370, 374 (5th Cir.1987) (Citations omitted).

**25.** Response of Atofina, Exhibit E, pp. 15–16.

**26.** 681 F.2d 1003, 1007 (5th Cir.1982), *quoting Marathon Metallic Building Co. v. Mountain Empire Construction Co.,* 653 F.2d 921, 923 (5th Cir.1981).

The court continued by quoting *Prejean v. Sonatrach, Inc.,*[27] stating that " 'When a defendant purposefully avails himself of the benefits and protection of the forum's laws by engaging in activity . . . outside the state that has reasonably foreseeable consequences in the state-maintenance of the lawsuit does not offend traditional notions of fair play and substantial justice.' "[28]

The Fifth Circuit has also held that "[i]n order to support an antitrust claim, there must be actions which have a reasonably foreseeable effect in a defined U.S. market."[29] However, the Fifth Circuit relied on a decision rendered by the United States Supreme Court which held that " '[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field.' "[30]

This Court has considered all of the arguments and law set forth above and in the briefs filed by the parties whether specifically discussed herein or not. Taking the plaintiff's allegations as true, the Court finds that the plaintiff has established that Atofina, S.A. has conducted business within both the United States and Louisiana by marketing and selling its products in Louisiana and expressly dealing with a Louisiana citizen, Witco Corporation. This business relationship clearly establishes "minimum contacts" sufficient to allow this Court to exercise specific personal jurisdiction over Atofina, S.A.

The plaintiff also contends that the Court may exercise specific jurisdiction over Atofina, S.A. based upon Atofina, S.A.'s alleged conspiracy with other defendants who are subject to personal jurisdiction in this Court based on the Fifth Circuit decision in *Guidry v. United States Tobacco Company, Inc.*[31]

The *Guidry* case involved an alleged conspiracy among six tobacco manufacturers. The Fifth Circuit addressed the issue of whether or not it had personal jurisdiction over each of the tobacco manufacturers based on their alleged conspiracy to intentionally disseminate false information to consumers in Louisiana that tobacco products were not capable of causing serious addictions and cancer in humans.[32] The court ultimately held that it had personal jurisdiction over each of the six defendants independently based on the fact that each defendant made a representation which had tortuous consequences in the forum state.[33] Although the Fifth Circuit was not required to find personal jurisdiction based on the alleged conspiracy, it did address the issue. The court stated that "[t]he pleadings in a civil action for conspiracy must comply with the general requirement in Federal Rule of Civil Procedure 8 that the complaint contain a direct, simple, and concise statement that demonstrates the pleader is entitled to relief.[34] However, 'a general allegation of conspiracy without a statement of the facts constituting that conspiracy, is only an allegation

27. 652 F.2d 1260, 1268 (5th Cir.1981).

28. *Mississippi Interstate Express,* 681 F.2d at 1007

29. *Access Telecom,* 197 F.3d at 712 (5th Cir. 1999), *see* 15 U.S.C. § 6a; *see also Hartford Fire Insurance Co. v. California,* 509 U.S. 764, 113 S.Ct. 2891, 125 L.Ed.2d 612 (1993).

30. *Id.,* at 716, *quoting Asahi,* at 115, 107 S.Ct. 1026.

31. 188 F.3d 619 (5th Cir.1999).

32. *Id.*

33. *Id.,* at 627–28.

34. *Id.,* at 631; *See* 5 Wright & Miller § 1233 (*citing Arnold v. Board of Educ. of Escambia County, Ala.,* 880 F.2d 305, 309 (11th Cir. 1989); *Burns v. Spiller,* 161 F.2d 377 (D.C.Cir.1947), *cert. denied,* 332 U.S. 792, 68 S.Ct. 101, 92 L.Ed. 373 (1947)).

of a legal conclusion and is insufficient to constitute a cause of action.' "[35]

The Court further stated that "[w]hen a party asserts a claim in an action for civil conspiracy, 'pleading of the evidence is surely not required and is on the whole undesirable.[36] The courts have recognized that the nature of conspiracies often makes it impossible to provide details at the pleading stage and that the pleader should be allowed to resort to the discovery process and not be subjected to a dismissal of his complaint.' "[37] However, the Court also stated that "the complaint must contain sufficient information to show that a valid claim for relief has been stated and to enable the opponent to prepare adequate responsive pleadings."[38]

The defendants in *Guidry* attempted to compare the facts of their case to those in *Thomas v. Kadish*[39] just as Atofina, S.A. has done here. The *Guidry* court rejected this comparison and clarified its previous ruling in *Thomas v. Kadish*.

The *Guidry* court stated that *"Thomas v. Kadish* is a simple case in which the complaint was devoid of factual allegations. The plaintiff alleged no background facts whatsoever in support of his bare allegations of two very unlikely conspiracies ... Although we intimate no opinion as to the outcome, the Guidry's allegations, depositions and exhibits present a considerable amount of detailed information in support of a less farfetched conspiracy scenario. Consequently, the present case presents a dissimilar and more difficult problem for decision that is not readily controlled by

the easier no-factual allegation case of *Thomas v. Kadish.*"[40]

For the same reasons, the Court finds that Atofina, S.A. cannot rely on *Thomas v. Kadish* as a fair factual comparison because Crompton has presented a "considerable amount of detailed information in support" of the conspiracy scenario which is alleged in its complaint. Nothing more is necessary or required to establish specific personal jurisdiction.

2. Specific Jurisdiction over Daicel Chemicals, Inc.

 The putative defendant Daicel Chemicals, Inc. also argues that this Court may not exercise specific personal jurisdiction over it because Daicel lacks minimum contacts with Louisiana and the United States. Daicel also argues that the plaintiff has actually asserted jurisdiction over it based on Daicel's absence of contacts with the forum. Daicel contends that Crompton's allegation that Daicel refrained from selling "outside of Asia" is inadequate to establish specific jurisdiction. It is Daicel's position that an agreement to refrain from selling "outside of Asia" only confirms that Louisiana was not the focal point of Daicel's alleged conduct.

Daicel makes the same argument regarding conspiracy which Atofina, S.A. made. Like Atofina, S.A., Daicel relies on *Thomas v. Kadish* in support of its position that an alleged conspiracy cannot be the basis for a court to exercise personal jurisdiction over an alleged foreign co-conspirator. The Court finds that Daicel's argument regarding conspiracy and its re-

35. *Id.,* at 631–32; *quoting McCleneghan v. Union Stock Yards Co.,* 298 F.2d 659, 663 (8th Cir.1962)(Blackmun, J.); *See also* 5 Wright & Miller § 1223.

36. *Id.,* at 632, *quoting Nagler v. Admiral Corp.,* 248 F.2d 319, 326 (2d Cir.1957) (Clark, C.J.); *see* 5 Wright & Miller § 1221 and 1233.

37. *Id., quoting* 5 Wright & Miller § 1233, at 257.

38. *Id.*

39. 748 F.2d 276 (5th Cir.1984).

40. *Guidry,* 188 F.3d at 632–633.

liance on *Thomas v. Kadish* is without merit for the same reasons set forth in Section B.1 of this opinion.

Citing the Fifth Circuit case of *Bullion v. Gillespie*, Crompton argues that, contrary to Daicel's assertions, the Supreme Court has "consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction."[41] Crompton contends that, by agreeing not to participate in MCAA/SMCA markets, Daicel contributed to the injury Crompton suffered by requiring it to pay higher prices in the United States, just as if Daicel itself had sold the product to Crompton.

Crompton further argues that a restraint that unreasonably impairs competition in the United States is a violation of antitrust laws. According to Crompton, when that violation causes an effect in the United States, it is sufficient to form the basis of personal jurisdiction. Because Daicel and the other alleged co-conspirators knew that the injury would be felt where the consumer purchased the product, in this case Taft, Louisiana, Crompton argues that Daicel should have reasonably expected that it could be "haled into court" here for its participation in this anti-competitive agreement. The Court agrees with Crompton's position.

In addition to the reasons previously set forth above, the Court finds that plaintiff's complaint alleges sufficient minimum contacts with the United States to allow the Court to exercise specific personal jurisdiction over the putative defendant Daicel Chemical Industries, Inc.

While the Court has found that it has specific personal jurisdiction over each defendant, the Court will also discuss in the alternative, whether it also has general personal jurisdiction over the defendants.

## C. General Jurisdiction

As previously noted, a court may exercise general jurisdiction over a foreign defendant when "the nonresident defendant's contacts with the forum state, although not related to the plaintiff's cause of action, are 'continuous and systematic.' "[42]

The Fifth Circuit has held that one contact is not automatically insufficient under the Due Process Clause to subject the defendants to personal jurisdiction. In *Brown v. Flowers Industries, Inc.,*[43] the court held that "[t]he number of contacts with the forum state is not, by itself, determinative.[44] What is more significant is whether the contacts suggest that the nonresident defendant purposefully availed himself of the benefits of the forum state."[45] However, the Fifth Circuit also held that " [the unilateral activity] of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state.' "[46]

"In other words, even if a number of different contacts are independent of one another, if they occur with such frequency that the contacts in general are 'continuous and systematic,' there is general jurisdiction."[47]

**41.** 895 F.2d 213, 216, n. 6, (5th Cir.1990), *quoting Burger King,* 471 U.S. at 476, 105 S.Ct. at 2184.

**42.** *Alpine View,* at 215; *citing Helicopteros,* 466 U.S. at 415–16, 104 S.Ct. at 1872.

**43.** 688 F.2d 328 (5th Cir.1982).

**44.** *Id.,* at 333, *citing Quasha v. Shale Dev. Corp.,* 667 F.2d 483, 488 (5th Cir.1982).

**45.** *Id.*

**46.** *Thomas v. Kadish,* 748 F.2d 276, 282–83 (5th Cir.1984), *quoting Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283 (1958).

**47.** *Access Telecom,* 197 F.3d at 717.

The Fifth Circuit has further held that " 'while a single transaction of business may not be sufficient to establish venue in a district, it does not require the maintenance of an office or place of business or the presence of agents soliciting or taking orders. * * * The sale of goods is not essential to constitute transacting business. All the steps leading up to or in promoting sales may constitute the transaction of business.' "[48]

### 1. General Jurisdiction over Atofina, S.A.

Atofina, S.A. claims that this Court cannot exercise general personal jurisdiction over it because it does not have sufficient "continuous and systematic" contacts with Louisiana or the United States. Atofina, S.A. contends that it only has one MCAA customer in the United States and no other contacts. Atofina, S.A. further argues that its sales of the products to Atofina Chemicals, a subsidiary who does business directly with the United States, does not invoke the benefits or protections of the laws of the United States.

In its opposition to defendant's motion, Crompton contends that Atofina, S.A. has imported over 274 million pounds of products to Atofina Chemicals in the United States between 1997 to 2001. Crompton alleges that these products included MCAA/SMCA which was then sold by Atofina Chemicals pursuant to the prices and market shares directed by Atofina, S.A. Crompton also emphasizes that Atofina, S.A.'s product director visited the United States about three times a year over the last ten years and that this defendant's predecessor, Atochem, S.A., generally visited the United States approximately every two months to attend Board of Directors meetings.[49]

Crompton argues that these are continuous and systematic business contacts which have been very profitable for Atofina, S.A. Crompton contends that such contacts are evidence that Atofina, S.A. purposefully availed itself of the privilege of conducting business in the United States and is subject to the personal jurisdiction of this Court.

Atofina, S.A. argues that it does not have a parent/subsidiary relationship with Atofina Chemicals, and since it has no control over Atofina Chemicals, the actions of Atofina Chemicals can in no way be attributed to being actions by Atofina, S.A.

■■ Atofina, S.A. relies on the Fifth Circuit's decision in *Alpine View* wherein the court stated that " 'a foreign parent corporation is not subject to the jurisdiction of a forum state merely because its subsidiary is present or doing business there; the mere existence of a parent-subsidiary relationship is not sufficient to warrant the assertion of jurisdiction over the foreign parent'.[50] The degree of control exercised by the parent must be greater than that normally associated with common ownership or directorship." [51]

■■ It is Crompton's position that Atofina, S.A.'s control over Atofina Chemicals allowed the MCAA/SMCA and organic

---

**48.** *Datamedia Computer Service, Inc. v. AVM Corp.*, 441 F.2d 604, 605 (5th Cir.1971), *quoting Jeffrey–Nichols Motor Company v. Hupp Motor Car Corporation*, 46 F.2d 623, 625 (1st Cir.1931).

**49.** Crompton's Opposition to Atofina, S.A's Motion to Dismiss for Lack of Personal Jurisdiction, Rec. Doc. No. 133, Exhibit E, Response of Atofina Chemicals, Inc. to Crompton Corporation's Jurisdictional Discovery, pp. 14–15.

**50.** *Alpine View*, 205 F.3d at 218, *quoting Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1159 (5th Cir.1983).

**51.** *Id.*, at 219, *quoting Hargrave*, 710 F.2d at 1160 (*citing Reul v. Sahara Hotel*, 372 F.Supp. 995, 998 (S.D.Tex.1974)).

peroxide conspiracies to be implemented in the United States.[52] Crompton further contends that it has evidence that in some instances, products were shipped directly from Atofina, S.A. into the United States, and that employees of Atofina, S.A. have also made regular visits to the United States to attend business meetings and provide "technical support." [53] Crompton argues that Louisiana's interest in this litigation cannot be questioned where Atofina, S.A. directed its conspiratorial sales activities here and Crompton, formerly Witco, sustained injury here.

The Court finds plaintiff's argument persuasive. The Court further finds that if representatives of Atofina, S.A. had "pricing responsibilities" and provided "technical support" to the subsidiary Atofina Chemicals, who clearly directed their business activities to the United States, then the level of control Atofina, S.A. had over Atofina Chemicals is an issue for trial. Thus, if Atofina, S.A. was doing business with the United States through Atofina Chemicals, this provides sufficient continuous and systematic contacts to support a finding of general personal jurisdiction. Whether Atofina, S.A. is in fact liable to the plaintiff because of the actions set forth above is an issue for the Judge and jury to determine at trial.

### 2. General Jurisdiction over Daicel Chemical Industries, Inc.

■ Daicel argues that the plaintiff has not alleged "one single fact" [54] demonstrating "continuous and systematic" contacts with the forum unrelated to this litigation by Daicel. Daicel further argues that the plaintiff cannot seek to establish general jurisdiction over it at this stage in the litigation because plaintiff failed to allege facts supporting general jurisdiction in the original or amended complaint, failed to take general jurisdictional discovery at the time it sought specific jurisdictional discovery, or failed to advise the Court that it was pursuing general jurisdiction.

Crompton argues that is has not waived its right to prove general jurisdiction over Daicel and that the Court is free to consider any factual support for general jurisdiction. Crompton contends that the sales and marketing of its products in the United States is sufficient to establish general jurisdiction over Daicel. Crompton further contends that because Daicel's website characterizes its business as one of "global proportions" and describes its trading partner (Daicel (USA)) as an entity whose sole purpose is to market Daicel's products in the United States, Daicel has enough "continuous and systematic" contacts to support exercising general jurisdiction.[55] In fact, Crompton argues that these continuous, systematic, and profitable business contacts are evidence that Daicel has "purposefully availed itself" of the privilege of conducting business in the United States.

Crompton offers other evidence to support its claim of general jurisdiction. Crompton notes that Daicel has pled guilty to participating in a price-fixing conspiracy

---

**52.** Plaintiff's Opposition, p. 23.

**53.** Crompton's Opposition to Atofina, S.A.'s Motion to Dismiss for Lack of Personal Jurisdiction, Rec. Doc. No. 133, Exhibit F, P, Q, and E, deposition topic no. 10, p. 15.

**54.** Putative Defendant Daicel Chemical Industries, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction, Rec. Doc. No. 99, p. 7.

**55.** Opposition to Putative Defendant Daicel Chemical Industries, Inc.'s Motion to Dismiss Certain Claims for Lack of Personal Jurisdiction, Rec. Doc. No. 185, Exhibit A, www.daicel.com/about—daicel.html.

involving sorbates sold to the United States. Crompton also argues that the government has recognized Daicel's control over Daicel (USA), which allowed the sorbates conspiracy to be implemented in the United States. Thus, Crompton contends this presence in the United States is sufficient to allow the Court to exercise general jurisdiction over Daicel Chemical Industries, Inc.

Crompton further argues that Louisiana has substantial interest in this case because an alleged conspiracy was directed at Louisiana, affected sales in Louisiana to Louisiana customers, and caused alleged injury to a Louisiana citizen. The Court agrees with plaintiff's contentions.

The Court finds that the plaintiff has alleged sufficient uncontroverted facts which establish "continuous and systematic" business contacts such that the Court has authority to exercise general personal jurisdiction over Daicel Chemical Industries, Inc.

D. **Traditional Notions of Fair Play and Substantial Justice**

■ The Fifth Circuit has stated that "[w]hen a defendant purposefully avails himself of the benefits and protection of the forum's laws—by engaging in activity ... outside the state that bears reasonably foreseeable consequences in the state—maintenance of the law suit does not offend traditional notions of fair play and substantial justice.[56] In addition to the existence of foreseeable consequences, courts consider 'the quantity of

contacts, and the source and connection of the cause of action with those contacts' in determining whether a defendant's actions constitute 'purposeful availment.' "[57]

■ The court further stated that there are two other relevant factors in determining whether exercising personal jurisdiction comports with due process: " 'the interest of the state in providing a forum for the suit' "[58] and " 'the relative conveniences and inconveniences to the parties' are also relevant.' "[59]

In *Asahi Metal Industry Co., Ltd. v. Superior Court of California, Solano County,*[60] the United States Supreme Court set forth factors to address in determining the reasonableness of exercising personal jurisdiction over a foreign defendant. These factors are: (1) the burden on the defendant; (2) the interests of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) the interests of the several states.[61]

■ Both Atofina, S.A. and Daicel Chemical Industries, Inc. argue that having them defend a suit in the Middle District of Louisiana would offend "traditional notions of fair play and substantial justice" because neither of these defendants could reasonably expect to be haled into this Court. They also claim that defending a case in this Court would place an unreasonable burden on them.

Atofina, S.A. argues that to defend itself in this foreign court would be a significant burden. Atofina, S.A. further contends that Crompton's interests in pursuing their

**56.** *Brown v. Flowers Industries, Inc.* 688 F.2d 328, 333 (5th Cir.1982)(*quoting Mississippi Interstate Express, Inc. v. Transpo, Inc.,* 681 F.2d 1003, 1007 (5th Cir.1982)).

**57.** *Id., quoting Product Promotions, Inc. v. Cousteau,* 495 F.2d 483, 494, n. 17 (5th Cir. 1974).

**58.** *Id., quoting Austin v. North American Forest Products,* 656 F.2d 1076, 1090 (5th Cir. 1981); *Product Promotions,* 495 F.2d at 498.

**59.** *Id.*

**60.** 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987).

**61.** *Id.,* 480 U.S. at 113, 107 S.Ct. at 1034.

claims against Atofina, S.A. would not be hindered by a dismissal of Atofina, S.A. because there are several other defendants from whom Crompton purchased the items and who are subject to this Court's jurisdiction. Finally, Atofina, S.A. argues that it is France, and not the United States, that has the strongest interests in pursuing alleged wrongdoing that took place within its borders.

Relying on two Fifth Circuit decisions, Crompton argues that "it is incumbent on the defendant [Atofina, S.A.] to present a compelling case that the presence of some consideration would render jurisdiction unreasonable." [62] Crompton also argues that any inconvenience which Atofina, S.A. "may experience as a result of having to defend in this forum must be weighed against the public policy which favors providing a forum for an injured resident to bring an action against a nonresident manufacturer." [63]

Crompton contends that its right to recovery and Louisiana's interest in providing its injured citizen a forum clearly outweigh any inconvenience that Atofina, S.A. may sustain as a result of having to appear in this Court to defend its alleged conduct and conspiracy.

Crompton notes that Daicel has been forced to defend itself in United States courts in other lawsuits for alleged cartel activities. Furthermore, Crompton contends any inconvenience that Daicel may suffer is minimal compared to the injury Crompton has suffered and Louisiana's interest in providing its citizen a forum.

The Court finds that requiring Atofina, S.A. and Daicel Chemical Industries, Inc. to defend themselves in this Court would not offend "traditional notions of fair play and substantial justice." The Court finds that its decision which found personal general and specific jurisdiction exists over both defendants is reasonable in light of the contacts and business activities directed at the United States by both defendants.

## III. Conclusion

For the reasons set forth above, the Court finds that both defendants have sufficient minimum contacts with the United States and/or Louisiana to permit the Court's exercise of personal jurisdiction over them.

Therefore:

The defendant Atofina, S.A.'s Motion to Dismiss for Lack of Personal Jurisdiction [64], and the putative defendant Daicel Chemical Industries, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction [65] shall be DENIED.

IT IS SO ORDERED.

---

62. *Jones v. Petty–Ray Geophysical, Geosource, Inc.*, 954 F.2d 1061, 1068 (5th Cir.1992).

63. *Laitram Corp. v. OKI Elec. Industry Co., Ltd.*, 1994 WL 24241, *6 (E.D.La.1994).

64. Rec. Doc. No. 118.

65. Rec. Doc. No. 99.