**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 9, 2009

No. 09-50083

Charles R. Fulbruge III
Clerk

LAURIE D. MCFADIN, d/b/a Two Bar West; STACY L. MCFADIN, d/b/a Two
Bar West,

Plaintiffs - Appellants

v.

LYNN GERBER, d/b/a Foxy Roxy's, d/b/a Eternal Perspective Handbags;
WILLIAM GERBER, II, d/b/a Foxy Roxy's, d/b/a Eternal Perspective
Handbags; CONNIE GRENEMYER,

Defendants - Appellees

Appeal from the United States District Court
for the Western District of Texas

Before HIGGINBOTHAM and STEWART, Circuit Judges, and [*]ENGELHARDT,
District Judge.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Today we examine a Texas court's personal jurisdiction over Colorado
residents Connie Grenemyer and Lynn and William Gerber. We agree with the

[*] District Judge, Eastern District of Louisiana, sitting by designation.

district court that there is no jurisdiction over Connie Grenemyer and disagree with the district court's finding of lack of jurisdiction over the Gerbers.

I

Laurie and Stacie McFadin filed suit in the Western District of Texas against Connie Grenemyer, Lynn Gerber, and William Gerber II claiming that Grenemyer breached a sales representative agreement and that both Grenemyer and the Gerbers sold knock-off versions of the McFadins' handbags. The district court dismissed the suit for want of personal jurisdiction.

The McFadins design and manufacture hand-made leather goods, such as handbags and luggage, under the mark Two Bar West, selling wholesale to brick-and-mortar retail stores. Two Bar West's principal place of business is located within the Western District of Texas, where the McFadins reside.

Connie Grenemyer is an independent sales representative who represents various designers and manufacturers in the Rocky Mountain region, which encompasses Arizona, Colorado, Idaho, Montana, New Mexico, Utah, and Wyoming. Grenemyer maintains a showroom at the Denver Merchandise Mart where she displays her clients' merchandise. In addition, Grenemyer brings samples of the merchandise to various retail stores and wholesale markets and shows in her region. In her business she has never traveled to Texas nor does she maintain a website.

In either 1995 or 1996, Grenemyer entered into a sales representative relationship with Two Bar West after the company's former sales representative joined Grenemyer. In 1998, the McFadins approached Grenemyer at the Denver market to discuss a more formal representation, reaching a written agreement. They agreed that Grenemyer would be Two Bar West's primary, if not exclusive, sales representative and Two Bar West provided Grenemyer with samples for her showroom. Under the agreement, Grenemyer received a twelve-percent commission on all sales within the Rocky Mountain region and a six-percent

commission on all sales outside that region. Grenemyer took orders from various retailers at her showroom at the Denver market and on her sales trips, faxing the orders to Two Bar West in Texas. Two Bar West then shipped the goods directly to the retailers. The retailers paid Two Bar West, which then mailed commission checks to Grenemeyer in Colorado. Over the course of the ten year period, Grenemyer took orders for over $1,000,000 of merchandise from her Denver show room and sales trips in the Rocky Mountain region. Grenemyer never took orders in Texas and only $40,000 of the orders were from Texas based retailers.

In January 2008, the McFadins traveled to Denver and terminated their agreement with Grenemyer. A dispute arose regarding commissions owed to Grenemyer, and Grenemyer refused to return the Two Bar West sample merchandise until the dispute had been settled. The McFadins say that they do not owe Grenemyer additional commissions and that Grenemyer either wrongfully possesses or wrongfully sold around 650 pieces of merchandise.

## II

In 2006, Two Bar West sold two handbags to Linda Gerber through Grenemyer. Gerber is the sole proprietor of Foxy Roxy's, which markets a line of women's western wear. Gerber maintains a website, foxyroxys.com, through which she markets her products. The website provides a telephone number and email address where potential customers may contact Gerber in Colorado, however the website does not provide a mechanism to place orders directly. In addition, Gerber attends shows where her products can be displayed. Gerber's only trip to Texas was not for business purposes.

Gerber purchased several more bags from Two Bar West for retail sale. By 2008, when the McFadins terminated Grenemyer, Two Bar West no longer sold Gerber its products. The McFadins allege that this cessation of business followed an email exchange that led Laurie McFadin to believe that Gerber

would sell the Two Bar West bags over the internet rather than through brick-and-mortar stores. Gerber maintains she ceased buying the bags "due to numerous problems."

That month, Gerber and her husband, William Gerber II, formed Eternal Perspectives LLC, a Colorado Limited Liability Company. Eternal Perspectives manufactures and markets "western buffalo hide bags and other buffalo products." The bags are marketed through Eternal Perspectives's website, Foxy Roxy's website, and by Grenemyer, who the Gerbers hired as a sales representative. The Eternal Perspectives website, www.eternalperspectives.com, like the Foxy Roxy's website, contains contact information for the Gerbers, but offers no means for a client to purchase through the site. The Eternal Perspectives website also listed Grenemyer as its sales representative. However Grenemyer maintains she has not seen the site and has received no calls as a result of the listing. Grenemyer maintains that sales came solely from purchasers contacting Grenemyer in Colorado, by telephone, email, or at the shows.

## III

In March of 2008, Jason Brockman, a resident of Colorado and another independent sales representative, brought pieces of the Eternal Perspectives merchandise line to the Dallas Market Center merchandise trade show in Dallas, Texas. Brockman and Grenemyer knew each other in Denver and would occasionally act as sub-representative at shows the other did not attend. As Grenemyer does not attend the Dallas show, Brockman offered to display some of Grenemyer's lines, including the Eternal Perspectives line. While Grenemyer did not pay Brockman's costs or plan his trip, the Gerbers and Eternal Perspectives contributed to the costs of his booth at the show. Under this sub-representation agreement, the main representative (in this case Grenemyer) received a two-percent over-ride commission and the sub-representative

(Brockman) received a ten-percent commission on any sales. At the Dallas show, Brockman made several sales, though not enough to be profitable and only four of the customers were Texas-based. Additionally, Brockman wrote two orders for Eternal Perspectives handbags for Texas-based customers after the show. All six of the orders were small enough to be considered "personal orders" rather than "accounts." These orders were faxed to Grenemyer who then faxed them to the Gerbers. The Gerbers then paid Brockman his commission directly once the Gerbers recieved payment from the buyers.

## IV

Defendants moved to dismiss for lack of personal jurisdiction, improper venue, and insufficient service of process, or alternatively, for a change in venue. The district court, accepting a magistrate judge's report and recommendation, dismissed all claims for lack of personal jurisdiction. The McFadins now appeal.

We review the district court's dismissal for lack of personal jurisdiction de novo.[1] On a challenge to the court's personam jurisdiction, a plaintiff must make only a prima facie showing of the predicate facts.[2] In turn we "must resolve all undisputed facts submitted by the plaintiff, as well as all facts contested in the affidavits, in favor of jurisdiction."[3]

A federal court may exercise personal jurisdiction over a nonresident defendant if (1) the forum state's long-arm statute confers personal jurisdiction over that defendant; and (2) the exercise of personal jurisdiction comports with the Due Process Clause of the Fourteenth Amendment.[4] As the Texas long-arm

---

[1] *Moncrief Oil Int'l v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007).

[2] *Luv N' Care, Ltd., v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006).

[3] *Id.*

[4] *Moncrief Oil Int'l*, 481 F.3d at 311.

statute extends as far as constitutional due process allows, we only consider the second step of the inquiry.[5]

The relevant standard for due process is rote: "The plaintiff must show that (1) the defendant purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state, and (2) the exercise of personal jurisdiction over that defendant does not offend traditional notions of 'fair play and substantial justice.'"[6] "Where a defendant 'has continuous and systematic general business contacts' with the forum state, the court may exercise 'general jurisdiction' over any action brought against the defendant. Where contacts are less pervasive, the court may still exercise 'specific' jurisdiction 'in a suit arising out of or related to the defendant's contacts with the forum.'"[7] The McFadins claim only specific jurisdiction.

In this circuit, specific personal jurisdiction is a claim-specific inquiry: "A plaintiff bringing multiple claims that arise out of different forum contacts of the defendant must establish specific jurisdiction for each claim."[8] We have articulated a three-step analysis for specific jurisdiction: "(1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable."[9]

---

[5] *Id.* at 311 n.1.

[6] *Id.* at 311 (citing *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)).

[7] *Luv N' Care*, 438 F.3d at 469 (citing *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 415 (1984)).

[8] *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266 (5th Cir. 2006).

[9] *Id.* at 271 (citing *Nuovo Pignone, SpA v. STOREMAN ASIA M/V*, 310 F.3d 374 (5th Cir. 2002)).

The "minimum contacts" inquiry is fact intensive and no one element is decisive; rather the touchstone is whether the defendant's conduct shows that it "reasonably anticipates being haled into court."[10] The defendant "must not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or third person.'"[11]

In determining whether or not exercise of jurisdiction is fair and reasonable, defendants bear the burden of proof and "it is rare to say the assertion [of jurisdiction] is unfair after minimum contacts have been shown."[12] In this inquiry we examine five factors: "(1) the burden on the nonresident defendant, (2) the forum state's interests, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in furthering fundamental social policies."[13]

V

The McFadins allege the court has specific jurisdiction over Grenemyer with respect to both their contract and tort claims. We find that there is no personal jurisdiction over Grenemyer with respect to the contract claim. It is clearly established that "merely contracting with a resident of the forum state does not establish minimum contacts."[14] Jurisdiction must not be based on the fortuity of one party residing in the forum state. The McFadins rely on the fact

---

[10] *Luv N' Care*, 438 F.3d at 470 (citing *World Wide Volkswagen Corp., v. Woodson*, 444 U.S. 286, 297 (1980)).

[11] *Electrosource, Inc., v. Horizon Battery Techs., Ltd.*, 176 F.3d 867, 871–72 (5th Cir. 1999) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)); *see also Moncrief Oil Int'l*, 481 F.3d at 312.

[12] *Wien Air Alaska, Inc., v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999).

[13] *Luv N' Care*, 438 F.3d at 473.

[14] *Moncrief Oil Int'l*, 481 F.3d at 311; *see also Burger King Corp.*, 471 U.S. at 478.

that the contract created a ten-year sales representation relationship between the parties and that there were significant communications—including sales orders and commission payments—between Grenemyer in Colorado and the McFadins in Texas. In addition, the McFadins point to the sales by Grenemyer to Texas residents. These contacts are insufficient.

We have held that communications relating to the performance of a contract themselves are insufficient to establish minimum contacts.[15] Here the contract was centered around Grenemyer's operations outside Texas. The McFadins approached Grenemyer about establishing the representation relationship in Colorado, Grenemyer's sales region did not include Texas but explicitly focused on the Rocky Mountain states, and Grenemyer never traveled to Texas to sell the McFadins' handbags. The entire purpose of the agreement was to open up markets outside of Texas to Two Bar West handbags.

The McFadins point to *Product Promotions, Inc., v. Cousteau*[16] and *Mississippi Interstate Express v. Transpo, Inc.*[17] to support the proposition that contracting with a known Texas resident is sufficient to establish jurisdiction in Texas. However, these cases are distinguishable from the instant one. In *Product Promotions*, the court rested heavily on the fact that the contract was consummated in Texas and that Texas law would likely apply to the contract. The defendants in *Product Promotions* "had reason to foresee that enforcement and protection of its own rights under the contract might depend on the laws of

---

[15] *Freudensprung v. Offshore Technical Services, Inc.*, 379 F.3d 327 344 (5th Cir. 2004) ("this court has repeatedly held that the combination of mailing payments to the forum state, engaging in communications related to the execution and performance of the contract, and the existence of a contract between the nonresident defendant and a resident of the forum are insufficient to establish minimum contacts").

[16] 495 F.2d 483 (5th Cir. 1974).

[17] 681 F.2d 1003 (1982).

Texas."[18]   Here, however, the McFadins traveled to Colorado to establish the representation relationship and it appears that the contract was formed in Colorado.[19]   Likewise, Grenemyer's performance of the contract occurred in Colorado and the Rocky Mountain region.

*Transpo* is likewise inapposite.  The McFadins argue that *Transpo* stands for the proposition that a sustained contractual relationship supports a finding of minimal contacts.  However, in *Transpo*, we found that the forum state was "clearly the hub of the parties' activities."[20]  That case addressed the context of interstate trucking, where there was no "clear local nexus with any particular jurisdiction."[21]  That is not the case here.  Denver was the hub of activities. Grenemyer represented the McFadins primarily from her showroom in Denver and while Grenemyer did make a number of sales trips, they were to the Rocky Mountain region and did not include trips to Texas.  The little contact with Texas came only from the fortuity of the plaintiffs' residence there.  We therefore find that there are insufficient contacts to establish personal jurisdiction over Grenemyer with respect to the contract claim.  Finding no minimum contacts, we need not inquire into fairness.

VI

---

[18] *Product Promotions*, 495 F.2d at 497.

[19] There is a strong argument that Colorado law would apply to this contract.  In determining which law to apply to multistate contracts, Texas choice of law rules look to the factors listed in Restatement section 188 in order to determine which state "has the most significant relationship to the transaction." *Sonat Exploration Co., v. Cudd Pressure Control, Inc.*, 271 S.W.3d 228, 233 (Tex. 2008).  In this particular contract, all factors—including the place of contracting, place of negotiation, place of performance, location of the subject matter—except the residency of the McFadins, point to Colorado as the state with the most significant relationship.

[20] *Transpo*, 681 F.2d at 1011.

[21] *Id.*

Nor is there jurisdiction over the McFadins' tort claims against Grenemyer. "When a nonresident defendant commits a tort within the state, or an act outside the state that causes tortious injury within the state, that tortious conduct amounts to sufficient minimum contacts with the state by the defendant to constitutionally permit courts within that state, including federal courts, to exercise personal adjudicative jurisdiction over the tortfeasor."[22] Additionally, "[e]ven an act done outside the state that has consequences or effects within the state will suffice as a basis for jurisdiction in a suit arising from those consequences if the effects are seriously harmful and were intended or highly likely to follow from the nonresident defendant's conduct."[23]

The McFadins argue that Grenemyer had sufficient minimum contacts with Texas because her sales of allegedly infringing handbags caused an injury in Texas and there was an agency relationship between Brockman and Grenemyer that supports jurisdiction based on the sales in Dallas. While the actions of an agent may establish minimum contacts over a principal,[24] we agree with the district court that the relationship between Brockman and Grenemyer will not sustain attribution to Grenemyer of his actions in Texas. Brockman and Grenemyer apparently had a revenue sharing agreement and Grenemyer loaned Brockman samples of the Gerbers' goods for display in his Dallas booth. But Grenemyer did not direct Brockman to sell bags in Texas. Such conduct is insufficient to establish a relevant agency relationship.[25]

---

[22] *Guidry v. United States Tobacco Co.*, 188 F.3d 619, 628 (5th Cir. 1999).

[23] *Id.* (citing *Calder v. Jones*, 465 U.S. 783, 789-90 (1984)).

[24] *See Product Promotions*, 495 F.2d at 492; 4A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 1069.5 (3d ed. 1998).

[25] *See Indian Harbor Ins. Co. v. Valley Forge Ins. Group*, 535 F.3d 359, 364 (5th Cir. 2008) (stating that under Texas law to prove agency "evidence must establish that the principle has both the right: (1) to assign the agent's task; and (2) to control the means and details of the process by which the agent will accomplish that task"). Grenemyer's commission

The McFadins allege that Grenemyer's sale of the Gerbers' handbags has caused injury in Texas and that these injurious effects should be sufficient to establish personal jurisdiction. It is true that in *Guidry*, we applied the "effects test" of *Calder v. Jones* to torts outside the libel context. However, the effects doctrine is not as expansive as the McFadins argue. As we have held "[f]oreseeable injury alone is not sufficient to confer specific jurisdiction, absent the direction of specific acts toward the forum."[26] Here, the actions of selling allegedly infringing handbags are not directed towards Texas in any manner.[27]

That Grenemyer is listed on the Gerbers' Eternal Perspectives website is here of no moment. We have distinguished "passive" and "active" websites in examining a claimed showing of minimum contacts.[28] Here the website was passive, providing no means for orders, offering only Grenemyer's contact information. We have found similar webpages to be insufficient to meet minimum contacts.[29]

The McFadins also rest heavily on our decision in *Luv N' Care, Ltd. v. Insta-Mix, Inc.*[30] applying the Supreme Court's "stream of commerce" doctrine

---

on sales by Brockman is perhaps best described as a fee for allowing Brockman access to Grenemyer's clients.

[26] *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 212 (5th Cir. 1999) (expressing concern that too broad a reading would subject a nonresident defendant "to jurisdiction in Texas for an intentional tort simply because the plaintiff's complaint alleged injury in Texas to Texas residents regardless of the defendant's contacts, and would have to appear in Texas to defend the suit no matter how groundless or frivolous the claim may be").

[27] Nor does the arrangement with Brockman change this analysis. Brockman was not acting as Grenemyer's agent.

[28] *Revell v. Lidov*, 317 F.3d 467, 472 (5th Cir. 2002).

[29] *See Mink v. AAAA Dev. LLC*, 190 F.3d 333, 336-37 (5th Cir. 1999); *see also Revell*, 317 F.3d at 472 (highlighting the factors in Mink—identical to those at issue here—which categorize the page as passive for jurisdiction analysis purposes).

[30] 438 F.3d 465 (5th Cir. 2006)

to trademark infringement claims. We held that "[w]here a defendant knowingly benefits from the availability of a particular state's market for its products, it is only fitting that the defendant be amenable to suit in that state."[31] And where a defendant places a product into the stream of commerce with the intention that it reach foreign markets, the defendant may reasonably be hailed into court in those forums for claims arising out of the product. But *Luv N' Care* does not control here. There the defendant was a Colorado distributor selling products to Wal-Mart for resale around the country, including sixty-five orders with invoices indicating that they were to be shipped to Louisiana, the forum state. Importantly, the court distinguished the situation in *Luv N' Care* from that in *Charia v. Cigarette Racing Team, Inc.*,[32] which found that "four sporadic and isolated sales did not establish sufficient basis for jurisdiction." Grenemyer received, at most, a two-percent commission for sales by Brockman of the Gerbers' goods. She did not direct Brockman to go to Texas, nor did she supply the goods that were ultimately sold. Thus her involvement in the sale of the Gerbers' handbags in Texas could at most be described as peripheral. Such a tenuous economic connection to the forum is insufficient to establish minimum contacts.

## VII

The McFadins also appeal the district court's dismissal of their tort claims against the Gerbers for lack of personal jurisdiction. We disagree with the district court and find that the exercise of personal jurisdiction over the Gerbers would not offend due process.

Again we apply the three-step analysis to determine specific personal jurisdiction: "(1) whether the defendant has minimum contacts with the forum

---

[31] *Id.* at 470.

[32] 583 F.2d 184, 189 (5th Cir. 1978).

state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable."[33]

Here, the Gerbers', through their relationship with Brockman, sufficiently directed the sale of their handbags to Texas such that they could reasonably anticipate being haled into court there. The Gerbers hired Brockman to sell their bags to prospective retailers at the Dallas Market Center. To further his endeavors, they contributed to the costs of Brockman's booth and the show and agreed to pay Brockman a ten-percent commission on all sales of their bags. Moreover, Brockman did in fact sell bags to buyers at the Dallas show (four of whom were residents of Texas). This is not a case where the court is forced to look to the defendants' placement of products in the stream of commerce[34] or the effects of its actions outside the forum state within the state.[35] Here, the Gerbers purposefully directed the sale of their goods, through Brockman, in Texas, thus allegedly committing a tort there while availing themselves of the benefits of the Texas market. Such action is sufficient to establish minimum contacts with Texas.[36]

Addressing the second step, the tort claims arise directly from sales within Texas. The McFadins allege that the Gerbers' handbags, sold through Brockman in Dallas, infringe on their trademarks.

---

[33] *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006) (citing *Nuovo Pignone, SpA v. STOREMAN ASIA M/V*, 310 F.3d 374 (5th Cir. 2002)).

[34] *See Luv N' Care*, 438 F.3d at 470 (discussing "stream of commerce theory" and citing *World Wide Volkswagen Corp., v. Woodson*, 444 U.S. 286, 298 (1980)).

[35] *See Calder v. Jones*, 465 U.S. 783, 789-90 (1984).

[36] *Guidry v. United States Tobacco Co.*, 188 F.3d 619, 628 (5th Cir. 1999).

After finding that the claim arises out of the minimum contacts with the forum state, we ask if exercise of jurisdiction is fair and reasonable using the five factors we have listed. Here Texas has an interest in protecting its residents' property rights and providing a convenient forum for its residents to resolve their disputes. The McFadins have an obvious interest in securing relief as quickly and as efficiently for themselves as possible. In addition, it is unlikely that efficient resolution of this case would be disserved by resolution in Texas as opposed to Colorado. The evidence at issue is not difficult to transport and there would be no significant burden on the court in hearing this case in Texas. As we have stated before, "once minimum contacts are established, the interests of the forum and the plaintiff justify even large burdens on the defendant."[37] The generalized difficulty in traveling to Texas is here not a burden violative of due process and we find that the court may exercises personal jurisdiction over the Gerbers with respect to the McFadins' tort claims.

We AFFIRM in part and REVERSE in part; the case is REMANDED to the district court for further proceedings.

---

[37] *Id.*