BARNES, J.,
for the court:
¶ 1. Sherrie Allison Miller sued Anna Cladakis in the DeSoto County Circuit Court for alienation of affection and intentional infliction of emotional distress. Miller also sued Cladakis’s alleged employers: Provident Advertising and Marketing Inc. (Provident), Provident Management Corporation Inc., Hooters Inc., and Hooters of America LLC[1] (HOA), (in aggregate the “Entity Defendants”). The trial court determined it lacked personal jurisdiction over Cladakis and the Entity Defendants and dismissed Miller’s suit. On appeal, we affirm dismissal of the Entity Defendants for lack of personal jurisdiction, but reverse and remand as to jurisdiction over Cladakis for Miller’s alienation-of-affeetion claim. Additionally, we find error in the trial court’s imposition of Cladakis’s costs and attorneys’ fees under the Litigation Accountability Act.
STATEMENT OF FACTS AND PROCEDURAL HISTORY
¶ 2. Miller and John Daly, residents of Tennessee, were married on July 29, 2001, in Tennessee. They divorced on February 19, 2010. Miller filed her initial complaint in the DeSoto County Circuit Court on February 25, 2011, alleging that Cladakis’s improper conduct and contact with Daly was the proximate cause of Miller and Daly’s separation and eventual divorce. Further, the alleged improper contact, consisting of cell phone calls, text messages, and sexual encounters occurred between Daly and Cladakis, a Florida resident who was temporarily located in DeSoto County. Miller’s complaint also alleged that Cladakis interfered with Miller’s home in Tennessee by having her utilities shut off, interfered with the divorce proceedings in Tennessee from Daly, and interfered with the care and visitation/custodial rights of Miller and Daly’s son. The complaint alleged Cla-dakis’s interferences intentionally inflicted emotional distress upon Miller. Additionally, Miller alleged that the Entity Defendants were negligent in their supervision, training, retention, and hiring of Cladakis because they knew that Cladakis was having improper contact with Daly and that Cladakis’s conduct was intentionally inflicting emotional distress upon Miller. Therefore, Miller claimed the Entity Defendants were jointly and severally liable for damages Miller suffered, including:
[Ljoss of her marital estate including property; loss of society, companionship, love, and affection; loss of aide, services, and physical assistance; loss of sexual relations; loss of participation together in activities, duties, and responsibilities of making a home; past and future mental distress; and any other damages proven to have proximately resulted] from the conduct of ... Cladak-is and/or [the Entity Defendants].
¶ 3. Also on February 25, 2011, Miller filed two subpoenas duces tecum on Verizon Wireless, without notice to Cladakis or the Entity Defendants, requesting the phone and text message records of Cladak-is and Daly from February 1, 2007, through February 25, 2011. Miller then filed another subpoena duces tecum on March 2, 2011, requesting privileged documents from Daly’s attorneys, including invoices for' Daly, memorandums of telephone conversations with Cladakis, emails to and from Cladakis, and text messages to and from Cladakis. On March 15, 2011, Cladakis filed a notice of special appearance and a motion to quash the subpoena duces tecum requesting her cell phone rec *186 ords.[2] In the motion to quash, Cladakis asserted that she was “making a special appearance ... without waiving any substantive or procedural rights.” Further, Cladakis asserted that she intended to “file a motion to dismiss the complaint filed against her, as [the circuit c]ourt lack[ed] personal jurisdiction and subject matter jurisdiction.” Miller filed her first amended complaint on March 15, 2011, which was essentially identical to her original complaint.
¶4. Miller sought to have Cladakis’s motion to quash stricken because it contained the names of two attorneys not licensed in Mississippi or admitted pro hac vice. She also responded to the motion to quash by asserting that the trial court had jurisdiction of the case because the tort was conducted in whole or in part in Mississippi, and the cell phone records were necessary as proof of her alienation-of-affection claim. In response, Cladakis filed an amended notice of special appearance, which removed the names of the two attorneys not licensed in Mississippi and kept the name and signature of the attorney licensed in Mississippi. She also filed an amended motion to quash the subpoena duces tecum, which also removed the names of the two attorneys not licensed in Mississippi and left the licensed attorney.
¶ 5. Then, on March 31, 2011, Cladakis filed a notice of removal to federal court. The United Stated District Court for the Northern District of Mississippi entered an order on February 6, 2012, remanding the case to state court because all the defendants failed to consent to removal within thirty days, and Miller “did not waive her right to object to removal and has timely moved for remand.” The federal court mailed a certified copy of the remand order to the state court on February 16, 2012.
¶ 6. HOA filed its motion to dismiss on February 15, 2012. One argument raised in its motion to dismiss was the trial court’s lack of personal jurisdiction. The same day, HOA submitted the affidavit of Doug White, vice president of human resources for HOA, in which he states that HOA is a Georgia corporation with its principal place of business in Georgia, does not do any business in the state of Mississippi, and never employed Cladakis. Miller, however, submitted a UCC filing that seems to indicate HOA does do some business in Mississippi. The filing indicates HOA was the owner of a security system placed at 682 Goodman Road in Horn Lake, Mississippi. Miller also filed a business card for a Hooters restaurant on Goodman Road in Horn Lake, Mississippi, which referenced HOA.
¶ 7. The following day, HOA filed its answer to Miller’s complaint, again asserting the trial court lacked personal jurisdiction. In her answer to the complaint and a separate motion to dismiss, both filed on February 16, 2012, Cladakis asserted that Miller’s complaint should be dismissed for several reasons, including the trial court’s lack of personal jurisdiction over her. Also on February 16, 2012, the remaining Entity Defendants filed their motions to dismiss, likewise claiming, among other things, that the trial court lacked personal jurisdiction.
¶ 8. On February 27, 2012, Miller moved to file a second amended complaint, which would have given two specific dates of the alleged sexual and/or improper conduct, “inter alia, January 1, 2007, and April *187 13, 2008.” All of the defendants opposed Miller’s motion to amend her complaint, via a joint motion filed on March 9, 2012.
¶ 9. On April 20, 2012, several amended affidavits were filed by Hooters Inc., Provident, and Provident Management Corporation. Hooters Inc. filed the affidavit of Neil G. Kiefer, President of Hooters Inc., stating that Hooter’s Inc. is a Florida corporation, doing business in Florida, and does not do business in Mississippi. Hooter’s Inc. never employed or paid Cladakis. It is a separate company from the other Entity Defendants. As to the other defendants, Provident filed the affidavit of Wilson F. Williams, vice president and chief financial officer, stating that Provident (a Florida corporation) hired Cladakis, but only to do marketing work for the corporation in Florida, not Mississippi. The affidavit further states that the company never sent Cladakis to Mississippi, and only does marketing and advertising for Hooters restaurants in Florida, New York, and Illinois. Provident employees are paid under Provident Management Corporation, a Florida corporation.
¶ 10. The trial court heard arguments on a variety of motions from Miller, Cla-dakis, and the Entity Defendants on April 23, 2012. On May 15, 2012, the trial court granted the defendants’ motions to dismiss for lack of personal jurisdiction. The court found that while Mississippi’s long-arm statute applied for Miller’s allegations that the defendants committed a tort in whole or in part in Mississippi, Miller did not establish sufficient minimum contacts with Mississippi to satisfy due process. Further, the trial court found even if minimum contacts were established, “forcing the Defendants to litigate this matter in Mississippi would offend traditional notions of fair play and substantial justice.” By separate order filed the same day, the trial court denied Miller’s request to amend her complaint because it determined that it lacked personal jurisdiction over Cladakis and the Entity Defendants.
¶ 11. Following the trial court’s dismissal of her complaint, Miller timely filed a motion to alter or amend the judgment dismissing Cladakis and the Entity Defendants. While Miller’s motion to amend was pending, Cladakis filed a motion for an award of costs and attorneys’ fees pursuant to the Litigation Accountability Act codified in Mississippi Code Annotated sections 11-55-1 through-15 (Rev. 2012), which she had raised in her answer. The trial court denied Miller’s motions to alter or amend as to the Entity Defendants and as to Cladakis. Miller timely filed her notice of appeal on July 20, 2012, and a statement of her issues for appeal on July 30, 2012. She amended the statement of issues on the following day. In it, Miller alleged that the trial court could not address any other issues, including Cladak-is’s pending motion for costs and fees, because the notice of appeal filed on July 20, 2012, divested the trial court of jurisdiction.
¶ 12. On July 27, 2012, the trial court held a hearing on Cladakis’s motion for costs and attorneys’ fees; however, after receiving notice of the hearing, neither Miller nor her attorneys were-present. By order on November 6, 2012, the trial court granted Cladakis’s motion for costs and attorneys’ fees of $78,307.22, because “[ojbjectively speaking, [Miller] had no hope of success in proceeding with a claim for alienation of affection in which none of the parties were residents of Mississippi and none of the states where the parties reside recognize a claim for alienation of affection.”
¶ 13. Miller’s brief contains twenty-six issues for review; however, we find the most important issues to be personal jurisdiction and assessment of attorneys’ fees. *188 We find the remaining issues are either moot or without merit; however, we address them, as needed, throughout this opinion.
ANALYSIS
I. JURISDICTION

A. Personal Jurisdiction

¶ 14. The trial court found it lacked personal jurisdiction over all the defendants.[3]
¶ 15. The standard of review for jurisdictional issues is de novo. ' Joshua Properties, LLC v. D1 Sports Holdings, LLC, 130 So.3d 1089, 1092 (¶ 8) (Miss.2014) (citation omitted). For a motion to dismiss, “the allegations of the complaint, except as controverted by the defendants’ affidavits, must be taken as true.” Hogrobrooks v. Progressive Direct, 858 So.2d 913, 920( ¶ 22) (Miss.Ct.App.2003) (quoting Strong v. RG Indus., Inc., 691 F.Supp. 1017, 1018 (S.D.Miss.1988)). “[W]hen no pretrial evidentiary hearing is held, the plaintiff must only make a prima facie showing of personal jurisdiction.” Id. at 919 (¶ 22). The plaintiffs uncontroverted allegations of jurisdiction are presumed true. “Where the defendant, through affidavits shows that personal jurisdiction is lacking ... the plaintiff, through contrary affidavits, can reestablish [the] presumption” in favor of the plaintiffs allegations. In the circumstance of “dueling affidavits,” “the disputed jurisdictional facts are constructed in favor of the plaintiff.” Jeffrey Jackson, Personal Jurisdiction, 1 Mississippi Civil Procedure § 2:33 (2014).
¶ 16. Here, Miller only needs to establish a prima facie case for personal jurisdiction, as no evidentiary hearing occurred prior to the order of dismissal. Miller and Daly are residents of Tennessee and were married in Tennessee. Cladakis is a resident of Florida who was temporarily located in DeSoto County, Mississippi, during the alleged improper conduct. Cladakis’s alleged employers, the Entity Defendants, are nonresident defendants.
¶ 17. Miller alleged in her first amended complaint, upon which the defendants’ motions to dismiss are based, that Cladak-is’s improper conduct and activity, while in Mississippi, interfered with Miller’s Tennessee marriage to Daly. “[T]he separation and eventual divorce [of Miller and her husband] were proximately caused by the actions and conduct of Anna Cladakis, the paramour, [through] conduct and activity that was initiated and centered in De-Soto County, Mississippi via sexual and other improper contact between Cladakis and Daly.”[4] The complaint also alleged *189 that Cladakis intentionally inflicted emotional distress upon Miller before and after the divorce.
¶ 18. This Court must conduct a two-step analysis to determine whether to exercise personal jurisdiction over a nonresident defendant: (1) whether the nonresident defendant can be sued in Mississippi under the State’s long-arm statute; and if so, (2) whether the statute’s application complies with the Due Process Clause. Knight v. Woodfield, 50 So.3d 995, 998 (¶ 12) (Miss.2011) (citation omitted). Mississippi’s long-arm statute provides:
Any nonresident person ... who shall commit a tort in whole or in part in this state against a resident or nonresident of this state ... shall by such act or acts be deemed to be doing business in Mississippi and shall thereby be subjected to the jurisdiction of the courts of this state.
Miss.Code Ann. § 13-3-57 (Rev. 2012) (emphasis added). Despite the defendants’ allegations that there is no long-arm jurisdiction because the injury did not occur in Mississippi, the trial court concluded that the complaint states a cause of action for a tort committed at least in part in Mississippi.[5] We agree.
¶ 19. The elements of alienation of affection are: “(l)wrongful conduct of the defendant; (2) loss of affection or consortium;, and (3) causal connection between such conduct and loss.” Knight, 50 So.3d at 1000 (¶ 19) (quoting Fitch v. Valentine, 959 So.2d 1012, 1025 (¶ 36) (Miss.2007)). While “a claim for alienation of affections does not require that the plaintiff prove an adulterous relationship,”[6] sexual activity may well serve as an inducement for one spouse to abandon his/ her spouse. See Ainsworth v. Gildea, No. 3:09cv68-DPJ-JCS, 2010 WL 4007320, at *1 (S.D.Miss. Oct.12, 2010). As such, the *190 alleged sexual activity between Cladakis and Daly within the state of Mississippi, which contributed to the breakup of Daly’s marriage with Miller, constituted a tort committed, at least in part, within this state, and satisfies the long-arm statute.
¶ 20. For the Entity Defendants, Miller claims Cladakis was “in the course and scope of her employment or agency” with them, and her improper conduct with Daly was “initiated and centered in DeSoto County, Mississippi.” The complaint alleges the Entity Defendants are vicariously liable for Cladakis’s improper conduct. Miller contends the Entity Defendants were doing business in Mississippi.
¶ 21. HOA’s affidavit by White states HOA is a Georgia corporation with its principal place of business in Georgia, and does not do any business in the state of Mississippi. Miller submitted a UCC filing indicating HOA does do some business in Mississippi-HOA was the owner of a security system placed at 682 Goodman Road in Horn Lake, Mississippi. Miller also filed a business card for a Hooters restaurant on Goodman Road in Horn Lake, Mississippi, which evidences some relationship with HOA. While these documents do raise the question of whether HOA was doing some business in Mississippi, Miller has not challenged the affidavit of White that HOA did not employ Cladakis. Therefore, the allegation that HOA has committed a tort in whole or in part in Mississippi is without foundation.
¶ 22. The affidavit of Hooters Inc. stated it is a Florida corporation, doing business in Florida, and does not do business in Mississippi. Hooter’s Inc. never employed or paid Cladakis. It is a separate company from the other Entity Defendants. Miller has not challenged these representations by counter-affidavit. As with HOA, there is no prima facie case that Hooters Inc. committed a tort in whole or in part in Mississippi, which would subject it to jurisdiction within this state.
¶ 23. As to the other defendants, Provident’s affidavit by Williams stated that Provident (a Florida corporation) hired Cladakis, but only to do marketing work for the corporation in Florida, not Mississippi. The affidavit further states that the company never sent Cladakis to Mississippi, and only does marketing and advertising for Hooters restaurants in Florida, New York, and Illinois.[7] Miller has filed no competing affidavits to challenge Provident’s position that Cladakis’s employment did not include work in Mississippi. Further, Miller has not alleged in her complaint or any affidavit how any sexual impropriety between Cladakis and Daly, or other conduct that might have alienated Daly’s affection for Miller, was related to the course and scope of Cladak-is’s employment. See Baker Donelson-Bearman Caldwell & Berkowitz, P.C. v. Seay, 42 So.3d 474, 487-88 (¶¶ 38-39) (Miss.2010) (attorney’s affair with wife of former client was clearly beyond attorney’s course and scope of employment, so law firm could not be vicariously liable to former client for any tort arising out of affair, as affair was not motivated by desire to benefit firm). Accordingly, any minimum contacts of Cladakis cannot be attributed to Provident or Provident Management Corporation under principles of agency. See generally Jeffrey Jackson, Personal Jurisdiction, 1 Mississippi Civil Procedure § 2:21 (2014) (“[Cjonduct of those agents acting in their corporate ca *191 pacity will ‘count’ for the corporations for which they act.” (citing Int’l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)) (“[S]ince the corporate personality is a fiction, ... it is clear that ... its ‘presence’ without, as well as within its state of origin can be manifested only by activities carried on in its behalf only by those authorized to act for it.”)); see also McFadin v. Gerber, 587 F.3d 753, 761-62 (5th Cir.2009) (conduct insufficient to establish relevant agency relationship).
¶ 24. Therefore, we affirm the dismissal of the Entity Defendants.
¶ 25. However, we find that Miller has established a prima facie showing of personal jurisdiction over Cladakis for the purpose of her alienation-of-affection claim. Once long-arm jurisdiction is established, the plaintiff must still show that the nonresident defendant has sufficient “minimum contacts” with the forum state “such that the maintenance of the suit does not offend ‘traditional notions of fair play and substantial justice.’ ” Int’l Shoe, 326 U.S. at 316, 66 S.Ct. 154 (citation omitted). “The ‘minimum contacts’ inquiry is fact intensive and no one element is decisive; rather the touchstone is whether the defendant’s conduct shows that it ‘reasonably anticipates being haled into court.’ ” McFadin, 587 F.3d at 759 (citations omitted). “The defendant must not be haled into a jurisdiction solely as a result of ‘random,’ ‘fortuitous,’ or ‘attenuated’ contacts, or of the ‘unilateral activity of another party or third person.’ ” Id. (citations omitted).
¶ 26. Regarding the two types of minimum contacts, those for specific and general jurisdiction, we find in the present case that general jurisdiction is not present, as there is no showing that contacts with the forum are “systematic and continuous.” See Estate of Jones v. Phillips, 992 So.2d 1131, 1140-41 (¶ 20) (Miss.2008) (citing Helicopteros Nacionales de Colombia S.A. v. Hall, 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)). However, after a careful review of the record, we find Miller has established a prima facie case of specific jurisdiction over Cladakis for alienation of affection.
¶ 27. To make a prima facie showing for specific jurisdiction, a three-prong test must be satisfied:
(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
(2) the claim must be one which arises out of or relates to the defendant’s forum-related activities; and
(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.
Brayton Purcell, LLP v. Recordon & Recordon, 606 F.3d 1124, 1128 (9th Cir.2010) (citations omitted). The plaintiff has the burden of proving the first two prongs. If satisfied, the burden shifts to the defendant to prove jurisdiction would be unreasonable. Id.
¶ 28. The United States Court of Appeals for the Fifth Circuit has stated that:
When a nonresident defendant commits a tort within the state, or an act outside the state that causes tortious injury within the state, that tortious conduct amounts to sufficient minimum contacts with the state by the defendant to constitutionally permit courts within that state, including federal courts, to exercise personal adjudicative jurisdiction over the tortfeasor.
*192 McFadin, 587 F.3d at 761 (quoting Guidry v. U.S. Tobacco Co., 188 F.3d 619, 628 (5th Cir.1999)). In Elkhart Engineering Corp. v. Werke, 348 F.2d 861, 868 (5th Cir.1965), the same court had held that “[w]hen a non-resident has voluntarily entered a state and invoked the protections of its laws, it does not in our view offend ‘traditional notions of fair play and substantial justice’ to require the non-resident to answer in the courts of that state for any tortious acts committed while there.” The court quoted extensively from the rationale of Judge Learned Hand in Kilpatrick v. Texas & Pacific Railway Co., 166 F.2d 788, 791 (2nd Cir.1948):
It is settled that, given the proper procedural support for doing so, a state may give judgment in personam against a non-resident, who has only passed through its territory, if the judgment be upon a liability incurred while he was within its borders. That, we conceive, rests upon another principle. The presence of the obligor within the state subjects him to its law while he is there, and allows it to impose upon him any obligation which its law entails upon his conduct. Had it been possible at the moment when the putative liability arose to set up a pie-powder court pro hac vice, the state would have had power to adjudicate the liability then and there; and his departure should not deprive it of the jurisdiction in personam so acquired.
Werke, 343 F.2d at 867-68.
¶ 29. In tort cases, there are two alternate tests for determining whether the nonresident defendant “purposefully availed” himself to the forum. Blueskygreenland Envtl. Solutions, LLC v. 21st Century Planet Fund LLC, No. 12-81234-CIV, 2014 WL 1341277, at *5 (S.D.Fla. April 4, 2014). The first test is the Calder[8] effects test, where “a nonresident defendant’s single tortious act can establish purposeful availment, without regard to whether the defendant had any other contacts with the forum state....” Id. “The ‘effects test’ provides an additional means, unavailable in contract cases, of determining the appropriateness of personal jurisdiction-one that is based on a plaintiffs ties to the forum state and the harm suffered by the plaintiff.”[9] Id. This test does not “supplant the traditional minimum contacts test for purposeful availment applicable in contract and torts cases alike.” Id. Under the “traditional” test,
the court assesses the nonresident’s contacts with the forum state and asks whether those contacts: (1) are related to plaintiffs cause of action; (2) involve some act by which the defendant purposefully availed itself of the privileges of doing business within the forum; and (3) are such that the defendant should reasonably anticipate being haled into court in the forum.

Id.

¶ 30. Regarding the alienation-of-affection claim, the trial court reasoned that specific jurisdiction cannot exist because Cladakis did not direct her text messages and phone calls to á resident of Mississippi, since Daly was a resident of Tennessee. This analysis is correct up to *193 a point. Under the Calder-effects test, any telephone calls from Cladakis to Daly from outside the state would not be sufficient to establish jurisdiction, as there would be no likelihood of damage suffered in the forum state. However, this analysis fails to take into consideration the alleged sexual encounters between Cladakis and Daly within the state of Mississippi.[10] Cla-dakis has not filed any affidavit contradicting the allegations of Miller’s complaint. Accordingly, .these allegations must be accepted as true for the purposes of the motion to dismiss. As previously noted, the alleged sexual activity between Cla-dakis and Daly within the state of Mississippi, which contributed to the breakup of Daly’s marriage with Miller, constituted a tort committed, at least in part, within this state. For whatever reason Cladakis and Daly chose Mississippi for the site of their liaisons, this Court finds that decision constituted a purposeful availment to activities within the state for purposes of personal jurisdiction.
¶ 31. The final step in the due-process analysis is whether the maintenance of the suit offends traditional notions of “fair play and substantial justice.” Knight, 50 So.3d at 1000 (¶ 20) (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). The analysis depends on: “(1) the forum state’s interest in adjudicating the dispute; (2) the plaintiffs interests in obtaining convenient and effective relief; (3) the interstate judicial system’s interest in obtaining the most efficient resolution of controversies; and (4) the shared interest of the several states in furthering fúnda-mental social policies.” Id. The defendants bear the burden of proof on this issue. McFadin, 587 F.3d at 759. “[I]t is rare to say the assertion of jurisdiction is unfair after minimum contacts have been shown.” Id. at 759-60; Thomas v. Skrip, 876 F.Supp.2d 788, 796 (S.D.Miss.2012) (citation omitted).
¶ 32. The comments to the Second Restatement of Conflict of Laws recognize:
A state has an especial interest in exercising judicial jurisdiction over those who commit torts within its territory. This is because torts involve wrongful conduct which a state seeks to deter, and against which it attempts to afford protection, by providing that a tortfea-sor shall be liable for damages which are the proximate result-of his tort.
Restatement (Second) of Conflict of Laws § 36(1) cmt. c (1971). Mississippi has refused to abolish the tort of alienation of affection. Fitch, 959 So.2d at 1018-19 (¶¶ 15-16); Bland, 735 So.2d at 418 (¶ 17). The purpose of this cause of action is to protect “love, society, companionship, and comfort that form the foundation of a marriage.” Fitch, 959 So.2d at 1019 (¶ 16). In Knight, the supreme court held that it did not offend “traditional notions of fair play and substantial justice” for a non-resident defendant to litigate in Mississippi for an alienation-of-affection claim. Knight, 50 So.3d at 1001 (¶ 21). While the state’s interest is not as strong in this case as it was in Knight since the marriage at issue is not a Mississippi marriage,[11] we still *194 conclude that Mississippi has “an especial interest” in this case. The Legislature, in modifying our state’s long-arm statute in 1980, expressed the public policy of the state to provide a forum for nonresidents to pursue compensation for torts committed in whole or in part in this state. See Camp, 462 So.2d at 727; 1980 Miss. Law, Ch. 437.
¶ 33. The trial court recognized Miller’s strong interest in obtaining effective relief for the alienation-of-affection tort she alleges occurred within our borders. Miller lacks a viable alternative forum to adjudicate that claim, since both Tennessee and Florida have abolished alienation-of-affection as a cause of action. This fact increases Mississippi’s interest in adjudicating this claim.
¶ 34. Permitting this suit to proceed would not hamper the interstate judicial system’s interest in obtaining the most efficient resolution to the controversy. The trial court noted the distance between Mississippi and Florida, where Cladakis resides, is not great. Also, it will be convenient for Miller to have this claim in Mississippi courts, as it is close to her resident state of Tennessee. Since the sexual activities between Cladakis and Daly allegedly occurred in the state, witnesses and evidence may be found here.[12] While it may no longer be as convenient for Cladakis, her burden is not a compelling reason to justify lack of jurisdiction. Further, there is no competing forum for this case, as Florida and Tennessee have abolished the tort of alienation of affection.
¶ 35. While this last fact would seem to weigh against furthering the “shared interest of the several States in furthering fundamental substantive social policies,” the Burger King Court noted that this factor may be accommodated by applying the proper choice-of-law rules[13] rather than finding jurisdiction unconstitutional. Burger King, 471 U.S. at 476-77, 105 S.Ct. 2174. Accordingly, the interests of the separate states would not be violated.
¶ 36. Because Miller’s prima facie showing evidences that Cladakis availed herself of the “privilege of conducting activities” with Daly in the state of Mississippi, we do not find it improper to bring her back into Mississippi to defend the alienation-of-affection case that arose out of those alleged activities.
¶ 37. While the parties and trial court have focused almost exclusively on Miller’s claim for alienation of affection, specific jurisdiction must be established for each claim if the plaintiffs claims relate to different forum contacts with the defendant. Seiferth v. Helicopteros Atuneros Inc., 472 F.3d 266, 274 (5th Cir.2006). Therefore, personal jurisdiction over Miller’s intentional-infliction-of-emotional-distress claim must be considered separately from her alienation-of-affection claim. Miller’s com *195 plaint(s) stated that Cladakis inflicted emotional distress upon Miller by: providing false reports to the police and human-services authorities regarding the care of Miller and Daly’s son; causing Miller’s utilities to be cut off; interfering with the education of the son; and interference with Miller’s visitation and custodial rights regarding the son. Miller’s complaint does not allege that any of the acts related to this claim occurred in Mississippi. Further, her complaint makes no claim that the sexual activity between Cladakis and Daly that allegedly occurred in Mississippi inflicted emotion distress. Accordingly, we have no jurisdiction over Miller’s claims for intentional infliction of emotion distress, and we affirm dismissal of this claim in its entirety.

B. Trial Court’s Jurisdiction Following Federal Court Removal

¶ 38. Miller argues that the trial court lacked jurisdiction to hear the motions to dismiss because the motions were filed prior to the federal court’s mailing the trial court a certified copy of the order of remand.[14] The federal court’s order of remand was entered on February 7, 2012, but was not mailed to the trial court until February 16, 2012. HOA filed its motion to dismiss on February 15, 2012, one day prior to the federal-court mailing. The motions of the remaining defendants were filed on February 16, 2012, the day of the federal mailing. The trial court heard argument on the motions on April 23, 2012, and ruled on May 15, 2012.
¶ 39. It is well settled that any action taken in state court following a notice of removal to the federal court is of no force or effect prior to remand. Crawford v. Morris Transp., Inc., 990 So.2d 162, 169 (¶ 21) (Miss.2008) (citing Rayner v. Raytheon Co., 858 So.2d 132, 133-34 (¶ 6) (Miss.2003)). Relying on the Fifth Circuit case of Arnold v. Garlock, 278 F.3d 426, 436-38 (5th Cir.2001), Miller asserts that the defendants’ motions were not properly before the trial court for review because they were filed prior to the date the federal court mailed the notice of remand. In Arnold, the Fifth Circuit stated: “[T]he federal court is not divested of jurisdiction until the remand order, citing the proper basis under [28 United States Code section] 1447(c), is certified and mailed by the clerk of the district court.” Arnold, 278 F.3d at 438. However, in Sibley v. Lincoln, C.A. No. C-07-258, 2007 WL 2176979, at *4 (S.D.Tex. July 27, 2007), the district court for the Southern District of Texas explained that the Arnold holding analyzes when a district court is divested of jurisdiction to review its own order of remand, which is once the certified copy of the remand order is mailed to the trial court. That particular issue is not at issue in the present case; thus Arnold offers no support for Miller’s argument.
¶ 40. Miller also relies on Rayner to support her position. However, Rayner’& exact language provides that “once removed to federal court, a case remains within the jurisdiction of the federal courts until an order is entered remanding the *196 matter back to the state court.” Rayner, 858 So.2d at 138 (¶ 6). Further, “until there is a remand order, the state court cannot proceed in a case that has been removed to federal court.” Id. at 134 (¶ 10). Rayner does not provide that jurisdiction is divested when the order of remand is mailed, but rather, when the order is entered. The federal court entered its order of remand on February 7, 2012, almost ten days before any motions to dismiss were filed.
¶ 41. Miller has not presented any authority that a state court lacks jurisdiction to consider a motion filed after entry of a federal court order of remand but before its mailing. Megibow v. Caron Org, 105 A.D.3d 549, 964 N.Y.S.2d 18 (N.Y.App.Div.2013), holds to the contrary. Further, HOA, the only defendant that actually filed its motion to dismiss prior to the mailing of the remand order, moved ore tenus at the April 23, 2012 argument to refile the motion for the court’s consideration. Miller has not provided any authority that this corrective action, if necessary, was not effective.
¶ 42. We find this issue to be without merit.
II. ATTORNEYS’FEES
¶ 43. The trial court granted Cla-dakis $78,307.22 in attorneys’ fees under the Litigation Accountability Act, finding Miller “had no hope of success in proceeding with a claim for alienation of affection in which none of the parties were residents of Mississippi and none of the states where the parties reside recognize a claim for alienation of affection.” Section 11-55-3(a) allows imposition of fees when the claim is “frivolous, groundless in fact or in law, or vexatious, as determined by the court.” Choctaw Inc. v. Campbel-Cherry-Harrison-Davis & Dove, 965 So.2d 1041, 1044-45 (¶ 7) (Miss.2007). Obviously, our reversal of the trial court’s judgment regarding jurisdiction undermines the trial court’s position on attorneys’ fees as well. Accordingly, we reverse the award of attorneys’ fees to Cladakis.[15]
1144. However, even if we were to affirm dismissal of the case for lack of jurisdiction, we would nonetheless reverse and render the award of attorneys’ fees. The issue is reviewed under an abuse-of-discretion standard. Id. at 1045 (¶ 8). The reviewing court uses the same test to determine whether a claim is frivolous under both Mississippi Rule of Civil Procedure 11 and the Litigation Accountability Act. Choctaw, Inc., 965 So.2d at 1044 (¶ 7) (citing Leaf River Forest Prods. v. Deakle, 661 So.2d 188, 197 (Miss.1995)). “[A] claim is frivolous ‘only when, objectively speaking, the pleader or movant has no hope of success.’ ” Id. (quoting Stevens v. Lake, 615 So.2d 1177, 1184 (Miss.1993)). “Though a case may be weak or ‘lightheaded,’ that is not sufficient to label it frivolous.” Id. at 1045 (¶ 7) (quoting Deakle, 661 So.2d at 195).
¶ 45. The supreme court in Camp held that, under our long-arm statute, a nonresident plaintiff can sue a nonresident defendant in the state for alienation of affection that occurred in whole or in part within our state. Camp, 462 So.2d at 727. The trial court concluded that the long-arm statute was satisfied in this case. It was only when conducting the “fact intensive” inquiry as to minimum contacts or balancing policy factors to determine whether the exercise of jurisdiction was unfair or unreasonable that any problem arose. We *197 could not conclude Miller’s claims “had no hope of success” when her case fell within our long-arm statute. Accordingly, we would find the trial court abused its discretion in awarding attorneys’ fees to Cladak-is even if we affirmed as to jurisdiction.
¶ 46. THE JUDGMENT OF THE CIRCUIT COURT OF DESOTO COUNTY IS AFFIRMED IN PART; REVERSED AND REMANDED IN PART; AND REVERSED AND RENDERED IN PART. ALL COSTS OF THIS APPEAL ARE DIVIDED EQUALLY BETWEEN THE APPELLANT AND AP-PELLEE CLADAKIS.
LEE, C.J., IRVING, P.J., ISHEE, CARLTON, FAIR AND JAMES, JJ., CONCUR. GRIFFIS, P.J., AND ROBERTS, J., DISSENT WITHOUT SEPARATE WRITTEN OPINION. MAXWELL, J., NOT PARTICIPATING.

. Hooters of America LLC was previously known as Hooters of America, Inc.

. On March 15, 2011, Daly also filed a motion to quash the subpoena duces tecum requesting his cell phone records. Miller also submitted another subpoena duces tecum almost identical to the March 2, 2011 subpoena duces tecum requesting information from Daly's attorneys.

. Miller submits that Cladakis waived her personal-jurisdiction defense by filing a pre-an-swer motion to quash without preserving this defense and by entering numerous appearances beyond a special appearance. Miller further argues that, because Cladakis waived her personal-jurisdiction defense, the Entity Défendants are subject to personal jurisdiction as well. We disagree. Cladakis's motion to quash preserved her personal-jurisdiction defense and subsequent motions indicated that she was not waiving any substantive or procedural rights and was primarily in pursuit of having Miller's complaint dismissed for a variety of reasons, chiefly due to the trial court’s lack of personal jurisdiction. Based on the evidence in the record, we find that Cladakis did not waive her defense of personal jurisdiction, and this issue is without merit. Miller's argument that the Entity Defendants were subject to personal jurisdiction due to Cladakis’s waiver is unsupported by cited authority, and also without merit.

. Miller moved to file a second amended complaint, which would have given two specific dates of the alleged sexual and/or improper conduct, "inter alia, January 1, 2007, and April 13, 2008.” In her requests for admission, Miller asked Cladakis to admit that on these dates Cladakis was engaged in sexual encounters with Daly on his tour bus parked in Mississippi, and that she knew Daly was married at the time. The trial court, howev *189 er, granted the defendants' motions for an extension of time to respond to discovery until ten days after the court ruled on the defendants’ jurisdictional motions. The trial court later held in its order dismissing the case on jurisdictional grounds that the propounded discovery "is unlikely to lead to any additional information that would be material to the Court’s decision in this case.” At oral argument before the trial court, counsel for Cla-dakis contended that the two dates referenced in the second amended complaint were the only attempts in the complaints to explain Cladakis’s relationship with Mississippi, and that it would be “futile” to allow the amendment. The amendment was denied on the same date the case was dismissed.
Miller raises the issue that the trial court erred in granting defendants’ motions to dismiss before ruling upon her motion to amend her complaint. After considering the motions, briefs, responses, and oral arguments, the trial court dismissed Miller's motion to amend as moot due to its dismissal for lack of personal jurisdiction. We find Miller’s argument is moot as to the Entity Defendants. On remand Miller may re-file whatever motions she deems appropriate as to Cladakis.
Miller also argues that the trial court erred in not amending her complaint to list the Entity Defendants by their proper corporate names and that Hooters Inc. was properly served. We cannot find anything in the record to indicate that the trial court found any error in the Entity Defendants' names or that Hooters Inc. was not served properly. Additionally, we cannot find where Miller requested the trial court to amend her complaint to correct the Entity Defendants’ names, nor does she provide citation to the record pointing to any disagreement about whether Hooters Inc. was served properly. These arguments are moot and without merit.

. See Camp v. Roberts, 462 So.2d 726 (Miss.1985) (overruled in part on other grounds) (New York resident brought alienation of affection action in Mississippi against another nonresident; supreme court found complaint contained sufficient allegations of tort committed in part within state to come within state long-arm jurisdiction).

. Hancock v. Watson, 962 So.2d 627, 630 (¶ 12) (Miss.Ct.App.2007) (quoting Bland v. Hill, 735 So.2d 414, 417 (¶ 13) (Miss.1999)).

. Provident employees are paid under Provident Management Corporation, a Florida corporation.

. Calder v. Jones, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984).

. Under the "Calder-effects” test,
a nonresident defendant's single tortious act can establish purposeful availment, without regard to whether the defendant had any other contacts with the forum state, but only where the tort: (l)[was] intentional; (2)[was] aimed at the forum state; and (3) caused harm that the defendant should have anticipated would be suffered in the forum state.
Blueskygreenland, 2014 WL 1341277, at *5.

. Miller claims the record shows Cladakis engaged in at least forty-one phone calls with Daly while within Mississippi. Phone records show that she made some phone calls from Mississippi, but they do not identify to whom. There is no affidavit identifying Daly’s phone number. Therefore, for the purpose of this analysis, we will disregard any phone contact originated by Cladakis within this state and focus on the alleged sexual impropriety.

. See generally Jeffrey Jackson, Personal Jurisdiction, 1 Mississippi Civil Procedure § 2:28 (2014) (state's interest is diminished *194 where party bringing the case is not a forum resident).

. The comments to the Second Restatement of Conflicts of Law further recognize:
[Witnesses in a tort action will usually reside in the state where the complained act took place. Hence the inconvenience to a non-resident defendant in being forced to defend the action in the state will be counterbalanced to some extent by the fact that he will thereby be spared the cost and trouble of transporting his witnesses to another state.
Restatement (Second) of Conflict of Laws § 36(1) (cmt. c).

. The trial court, at some point, will have to apply the ''most-significant-relationship test” to determine which substantive law controls this case. See Hancock v. Watson, 962 So.2d 627, 629-30 (¶ 10) (Miss.Ct.App.2007). If the law of Tennessee or Florida applies to Miller’s claim for alienation of affection, the claim will be dismissed. See id.

. Title 28, section 1447(c) of the United States Code (2012) provides:
A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal. A certified copy of the order of remand shall be mailed by the clerk to the clerk of the State court. The State court may thereupon proceed with such case.

. We find Miller’s issue regarding the trial court’s alleged lack of jurisdiction to conduct a hearing on attorneys’ fees and costs following Miller's filing of her notice of appeal to be moot.